**STATE of Iowa, Appellee,**

v.

**Steven Dale BRADLEY, Appellant.**

**No. 00–0894.**

Court of Appeals of Iowa.

Aug. 29, 2001.

Richard R. Hollis, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat, Assistant County Attorney, for appellee.

Heard by SACKETT, C.J., and VOGEL and ZIMMER, JJ.

VOGEL, J.

Steven Dale Bradley appeals the district court denial of his petition to stay his restitution obligation and to grant him a restitution hearing pursuant to Iowa Code Chapter 910. Because we find the petition did not contain a viable basis to challenge the restitution order, we affirm the district court.

*Background Facts and Proceedings.* In 1994 Bradley and three co-defendants were charged with two counts of first-degree kidnapping and one count of first-degree murder, based on allegations the four kidnapped and murdered two elderly Des Moines women, Clara Baker and Phyllis King. The murder charge arose out of the death of Baker only, as King was killed in Missouri. Bradley entered into an agreement with the State whereby he would plead guilty to first-degree murder in exchange for dismissal of both kidnapping counts. The plea agreement also stated Bradley would be pleading guilty to first-degree murder in Missouri, for the death of King, in an effort to avoid that state's death penalty. The State agreed to recommend that the Iowa sentence run concurrent with the one imposed in Missouri. The agreement was silent as to restitution.

At the February 1, 1995, Iowa plea proceedings, Bradley admitted he began his participation in the chain of events with foreknowledge that a co-defendant intended to kill King. He admitted to his voluntary participation in the abductions, acknowledging his understanding that, once Baker had been taken, his co-defendant would kill Baker as well. He then entered a guilty plea to first-degree murder in Iowa for the death of Baker, and the two kidnapping charges were dismissed. Eight days later he entered a guilty plea to first-degree murder in Missouri for the death of King.

On February 10, 1995, the Iowa district court sentenced Bradley to life in prison for Baker's murder, the sentence to run concurrent with the life sentence imposed in Missouri. The court directed Bradley to pay the fees of his court-appointed attorney to the extent he was reasonably able to do so, assessed him the court costs, and directed him to make restitution in

both its written order and oral recitation: "Defendant is ordered to make restitution. The amounts of restitution are not available at this time. At such time as the amounts are available, a supplemental order will follow."

On October 10, 1997, the State moved to amend Bradley's sentence to include restitution to the crime victim compensation program: $1,645.65 for payment made to Hamilton's Funeral Home, and $4,979.50 for payment made to Watts Funeral Home.[1] The court granted the State's motion, subject to Bradley's right to object within thirty days. No objection was made. The Department of Correctional Services subsequently entered an amended restitution plan, which included the crime victim assistance payments and $501.82 in court costs. Court-appointed attorney fees were later assessed at $10,503.50.

Bradley filed a pro se petition for a Chapter 910 restitution hearing, which included a request for a stay of his restitution obligation. The original petition, filed April 10, 2000, was supplemented on May 2, 2000. In his petition Bradley forwarded a number of grounds that essentially challenged the propriety of ordering $6,625.15 in restitution to the crime victim compensation program, but arguably directed a vague attack on the court costs and attorney fees as well. The district court denied Bradley's petition on two grounds, ruling the request untimely, as Bradley failed to object within thirty days to the 1997 supplemental restitution order, and finding the petition failed to establish any legal basis on which to grant the hearing request. It is from this order that Bradley appeals.

■ *Scope of Review.* Issues of jurisdiction and the authority of the district court are reviewed for errors at law. *State v. Wagner,* 596 N.W.2d 83, 85 (Iowa 1999). Decisions regarding sentencing and restitution issues are also reviewed for errors at law, Iowa R.App. P. 4, and are reversed only for a demonstrated abuse of discretion. *See State v. Mai,* 572 N.W.2d 168, 170 (Iowa Ct.App.1997). However, to the extent any such decision has constitutional implications, our review is de novo. *State v. Love,* 589 N.W.2d 49, 50 (Iowa 1998).

■ *Chapter 910 Restitution Hearing.* Under Iowa Code Chapter 910, a defendant is entitled to a restitution hearing, at any time during the term of incarceration, "if on the face of the petition it appears that a hearing is warranted." Iowa Code § 910.7 (1999). Thus, denying Bradley's request solely on the basis he had not objected to the supplemental restitution order in a timely manner was an abuse of discretion by the district court. However, the court also stated the petition did not establish any legal basis to grant a restitution hearing. Bradley contends this second ground was also an abuse of discretion and now forwards a number of reasons why a hearing should have been granted. We note his appellate brief raises issues not present on the face of the pro se petition and greatly expands other arguments that appeared only to a limited extent. Since we are reviewing the district court's determination that nothing in the petition warranted a restitution hearing, we look only to the contents of the petition, and not to any argument raised for the first time on appeal. *See State v. McCright,* 569 N.W.2d 605, 607 (Iowa 1997) ("Issues not raised before the dis-

---

1. Given the involvement of two separate funeral homes, it would appear that one of these bills is for the funeral expense of Baker and the other for the funeral expenses of King. There is no indication which bill might be attributable to which victim.

trict court, including constitutional issues, cannot be raised for the first time on appeal."). Before we address Bradley's contentions, however, we find it necessary to clarify the nature of the restitution ordered by the district court.

### ■ I. Distinguishing Pecuniary Damages and Crime Victim Assistance Payments.

Restitution is a broadly defined term:

> *"Restitution"* means payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution. *"Restitution"* also includes fines, penalties, and surcharges, . . . the payment of crime victim compensation program reimbursements, . . . court costs . . ., court-appointed attorney's fees, or the expense of a public defender, and the performance of a public service by an offender in an amount set by the court when the offender cannot reasonably pay all or part of the court costs . . ., court-appointed attorney's fees, or the expense of a public defender.

Iowa Code § 910.1(4) (1999). Thus, while payments to the crime victim compensation program and payments to the victim of a crime are both restitution in the general sense, they are distinguishable concepts: Pecuniary damages payable to a victim are afforded a heightened deference in certain respects.[2]

In recognizing that a goal of victim compensation is public protection, *see State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986), the legislature has dictated that restitution to "victims of the offender's criminal activities" shall be made in full before payment of any fine, penalty, surcharge, crime victim compensation program disbursement, cost or fee. Iowa Code § 910.2 (1999). *See also* Iowa Code § 915.100(2)(e) (1999). Moreover, while victim damages and even fines, penalties and surcharges must be paid in full, the legislature placed no such requirement on payments to the crime victim compensation program for any reimbursements it has made. Along with court costs and court-appointed attorney fees, an offender must make restitution to the program only to the extent he or she is reasonably able to do so. Iowa Code § 910.2 (1999).

There is no question that the funeral expenses paid by the crime victim compensation program originated as victim damages. At its core the program is a tool for reimbursing crime victims and their family members for some expenses arising out of certain illegal activities. *See generally* Iowa Code chapter 915, subchapter VI (1999). The legislature has made it clear, however, that once a victim has been paid by the crime victim compensation program and the offender's restitution obligation is thereby transferred to the program, the special deference afforded to victim damages is no longer applicable. *See* Iowa Code §§ 910.2, 915.100(2)(e) (1999).

This special emphasis on victim compensation facilitates another goal of victim restitution—offender rehabilitation. *See Kluesner*, 389 N.W.2d at 372. Restitution "goes beyond revenue recovery; it is designed to instill responsibility in criminal offenders." *State v. Haines*, 360 N.W.2d 791, 795 (Iowa 1985). Forcing a defendant to pay restitution directly to a victim harmed by the offender's criminal actions has a greater impact upon that defendant

---

**2.** It is arguable that the crime victim compensation program meets the definition of a victim. *See* Iowa Code § 910.1(5) (1999). However, as will be discussed, the remainder of the statutory provisions dealing with the issue of restitution indicate that offender restitution to the program is separate and distinct from restitution owed to "a person who has suffered pecuniary damages as a result of the offender's criminal activities." *Id.*

than ordering repayment of restitution already made through "an abstract and impersonal entity." *State v. Mayberry,* 415 N.W.2d 644, 646–47 (Iowa 1987) (quoting *Kelly v. Robinson,* 479 U.S. 36, 49 n. 10, 107 S.Ct. 353, 360 n. 10, 93 L.Ed.2d 216, 228 n. 10 (1986)).

With the distinction between victim damages and crime victim compensation program reimbursements set forth, we proceed to Bradley's arguments.

*II. Timeliness of Supplemental Order.* In order to assure prompt resolution of restitution issues, Iowa Code section 910.3 directs the State to provide, within thirty days of the sentencing date, a statement of any and all victim damages incurred up to the time of sentencing. *State v. Blakley,* 534 N.W.2d 645, 648 (Iowa 1995). However, as restitution is not inherently finite, and as costs and expenses can continue to accrue after sentencing, that section also provides for supplemental restitution orders, to include any amounts incurred after the sentencing date. *See id.* The 1997 order that directed restitution payments to the crime victim compensation program was such a supplemental order. *See* Iowa Code § 910.3 (1999).[3]

In his petition Bradley pointed out the significant length of time between sentencing and entry of the supplemental order and argued the State failed to timely provide a statement of damages as required by section 910.3. He now contends the more than two and one-half years of delay between sentencing and the supplemental order rendered the supplemental order untimely and therefore invalid. Although this latter argument was not explicitly stated in the petition, its various elements were present and sufficient to raise the issue for the district court's consideration.

We agree that the statement of pecuniary damages was not timely filed. The funeral expenses were initially incurred prior to sentencing, in 1994,[4] yet were not reported to the court until the State's 1997 request. *See Blakley,* 534 N.W.2d at 648 (indicating the relevant question is when the actual damages were incurred, regardless of when the victim was compensated by the crime victim compensation program). This failure by the State is not an automatic bar to the district court's order, however, as "the thirty-day requirement in section 910.3 is merely directory and not mandatory." *Id.*

While conceding the directory nature of the thirty-day requirement, Bradley argues the extensive delay between sentencing and the supplemental or-

---

**3.** That section specifically states, in pertinent part:

The county attorney shall prepare a statement of pecuniary damages to victims of the defendant and, if applicable, any award by the crime victim compensation program ..., and shall provide the statement to the presentence investigator or submit the statement to the court at the time of sentencing.... If pecuniary damage amounts are not available at the time of sentencing, the county attorney shall provide a statement of pecuniary damages incurred up to that time to the clerk of court. The statement shall be provided no later than thirty days after sentencing.... If the full amount of restitution cannot be determined at the time of sentencing, the court shall issue a temporary order determining a reasonable amount for restitution identified up to that time. At a later date as determined by the court, the court shall issue a permanent, supplemental order, setting the full amount of restitution. The court shall enter further supplemental orders, if necessary.

Iowa Code § 910.3 (1999).

**4.** Attached to the State's "Motion to Amend Sentence to Include Restitution to Crime Victim Assistance Program" were two "Summary of Payments Requested," one for each funeral home bill. Each summary contained a claim number and listed July 20, 1994 as the relevant date.

der is nevertheless unreasonable and contravenes the legislative objective that all restitution obligations be promptly determined. *See id.* Even if such is the case, the State's failure to comply with the thirty-day requirement "will not affect the validity of subsequent proceedings unless prejudice is shown." *Id.* (quoting *Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 628 (Iowa 1987)). *See also State v. Blakley*, 555 N.W.2d 221, 222 (Iowa 1996) (clarifying that demonstrated prejudice is a factor to be considered by the district court when reviewing a late-submitted statement of damages). Bradley does not attempt to argue the existence of prejudice in his written brief, and during oral argument his counsel conceded no prejudice resulted from the delay. Therefore, to the extent Bradley's petition for stay and hearing challenged the timeliness of the supplemental restitution order, it was properly denied.

***III. Duty to Impose Restitution.*** Bradley's petition also contended that the plea agreement's silence on the issue of restitution deprived the district court of authority to order restitution, including crime victim assistance payments, fees and costs. Bradley claims this silence evinces a mutual intent to waive his reimbursement obligations on these items and that the court was bound to honor the parties' implicit waiver agreement. This assertion is grounded in his belief the plea agreement was governed by Iowa Rule of Criminal Procedure 9(3), which states:

> When the plea agreement is conditioned upon the court's concurrence, and the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement. In that event, the court may accept a

waiver of the use of the presentence investigation, the right to file a motion in arrest of judgment, and time for entry of judgment, and proceed to judgment.

Iowa R.Crim. P. 9(3). It is Bradley's contention he conditioned his plea upon the court's ordering his Iowa life sentence to run concurrent with the sentence imposed in Missouri.

Although the record contains some support for the assertion that Bradley and the State entered into a Rule 9(3) plea, the status of the plea agreement does not bear on the court's duty to order restitution. In Iowa, imposing restitution is a mandatory obligation of the district court, regardless of how that restitution is classified:

> In all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered, *the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities*, to the clerk of court for fines, penalties, surcharges, *and*, to the extent that the offender is reasonably able to pay, *for crime victim assistance reimbursement, ... court costs [and] court-appointed attorney's fees....*

Iowa Code § 910.2 (1999) (emphasis added).

 Under section 910.2 the district court does have the power to determine if an item of victim damage is causally related to the offender's criminal activities, as well as the defendant's ability to make payment for crime victim assistance disbursements, court costs or attorney fees. *See State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct.App.1995). That section does not, however, grant the court authority to arbitrarily waive imposition of these items. *See State v. Jackson*, 601 N.W.2d 354, 356

(Iowa 1999) (ordering restitution for court costs mandatory); *Walters v. Grossheim*, 525 N.W.2d 830, 832 (Iowa 1994) (ordering restitution for victim damages compulsory). Given the mandatory nature of restitution imposition under section 910.2, silence in the plea agreement, standing alone, cannot preclude the district court from ordering restitution to the crime victim compensation program, or for fees and costs.[5]

■ *IV. Jurisdiction to Order Restitution for King's Funeral Expenses.* Bradley concedes that Iowa could have assumed territorial jurisdiction over King's death, as a crime "committed ... partly within this state." Iowa Code § 803.1(1)(a) (1999). *See also State v. Wedebrand*, 602 N.W.2d 186, 189–90 (Iowa Ct.App.1999) (finding Iowa had territorial jurisdiction to charge a defendant with first-degree murder as an aider and abettor of a Minnesota murder, where defendant participated in Iowa beating of kidnapping victim and victim's transport to Minnesota). It is equally clear that Iowa courts had initial subject matter jurisdiction over any charge arising from King's death. *See* Iowa Code § 602.6101 (1999). Bradley argues such jurisdiction was lost, however, once he was charged with King's

murder by the State of Missouri. He contends the Missouri prosecution not only deprived Iowa of jurisdiction to prosecute him for King's murder, but also of jurisdiction over all related issues, including restitution directly attributable to her death. Although this claim appears only in the appellate brief,[6] the issue of subject matter jurisdiction can be raised at any time. *State v. Moret*, 486 N.W.2d 589, 591 (Iowa 1992).

The parties' arguments broach the threshold question of whether the State's failure to charge Bradley with King's murder precludes court-ordered restitution for her funeral expenses. The State focuses on the fact that restitution for victim damages is not limited to convicted offenses, but is available for damages caused by an offender's "criminal activities," which include nearly any admitted or uncontested crime, whether or not that crime is ever prosecuted. Iowa Code § 910.1(1) (1999). If the issue before us was centered on victim damages, the State would be correct in its assertion that a preponderance of the evidence demonstrates a causal connection between those damages and Bradley's criminal acts. *See State v. Mai*, 572 N.W.2d 168, 171 (Iowa Ct.App.1997).

---

5. This is not to say that silence in the plea agreement can never impact on restitution. In *State v. Petrie*, 478 N.W.2d 620 (Iowa 1991), the Iowa Supreme Court held a defendant could be assessed only that portion of the prosecution expenses, such as court costs and attorney fees, which were attributable to the charge on which he was convicted. *Petrie*, 478 N.W.2d at 622. This rule has no impact on Bradley, however, as the connection between Baker's murder and the total fees and costs later assessed was not put in issue. Nor is it relevant to payment of King's funeral expenses, despite the arguable disconnect between these expenses and Bradley's conviction for Baker's murder.

 *Petrie* turned on the language of Iowa Code § 815.13, which specifically prohibits collec-

tion of prosecution expenses if "the defendant is found not guilty or the action is dismissed...." Iowa Code § 815.13 (1989). *Accord* Iowa Code § 815.13 (1999). By its very terms, this section applies only to expenses incurred in prosecution of the charge, and in no way addresses crime victim assistance payments. Nor does any other Code section require a causal connection between crime victim assistance payments and a defendant's conviction.

6. Bradley's hearing petition claimed only "that since the State of Iowa ran their sentence concurrent with the State of Missouri that they gave up jurisdiction to collect restitution."

Here, Bradley has admitted to both the abduction of King with foreknowledge that she would be killed and to aiding and abetting in her murder. King was therefore a victim of Bradley's "criminal activities," and the Iowa kidnapping, as well as the Missouri murder, were causally related to the funeral expenses. As such, the funeral bill constitutes pecuniary damages for which an offender must make payment. *See State v. Moore,* 500 N.W.2d 75, 76 (Iowa 1993). However, in this matter the funeral expenses take the form of crime victim assistance reimbursements. As previously discussed, this form of restitution is separate and distinct from restitution to be made to a victim.

■■■■■ When ordering an offender to pay victim restitution, the district court is charged with finding proximate causation between the offender's activities and the victim's damages. *See State v. Ihde,* 532 N.W.2d 827, 829 (Iowa Ct.App.1995). No such discretion exists in regard to crime victim assistance payments. The district court is not only authorized but mandated to order restitution for these amounts, subject only to the offender's reasonable ability to pay. Iowa Code § 910.2 (1999).

■■■■■ This is not to say an offender is without power to question the validity of an award made by the crime victim compensation program. Although the decision to award compensation lies with the Iowa Department of Justice, *see* Iowa Code § 915.81, that decision must be made in compliance with the prevailing law. Thus, a defendant could successfully challenge an order for payment made by the program if such payment was unauthorized by rule or statute. *See* Iowa Code chapter 915, subchapter VI (1999) (governing crime victim compensation program). *See also* Iowa Admin. Code r. 61–9.1(921)–9.36(915).

■■■■■ The department is directed to award compensation to a crime victim if it is satisfied "that the requirements for compensation have been met." Iowa Code § 915.81 (1999). Here, kidnapping King constitutes a crime as "conduct that occurs or is attempted in this state, poses a substantial threat of personal injury or death, and is punishable as a felony or misdemeanor." Iowa Code § 915.80(2) (1999). It is also arguable that Bradley's actions in Iowa constituted first-degree murder as an aider or abettor. *See Wedebrand,* 602 N.W.2d at 189–90. Moreover, King is a qualifying victim under Chapter 915 since she died as a result of the acts Bradley committed in Iowa. Iowa Code § 915.80(6) (1999). Thus, the award for her funeral expenses was appropriate within the bounds of the crime victim compensation program. Having found the district court did have the authority to impose these amounts, we turn to the question of whether the district court's jurisdiction was nevertheless usurped by Missouri when that state commenced its prosecution for King's murder.

In support of his position Bradley directs us to a number of civil cases from other states. Those cases found, in instances of concurrent jurisdiction, that whichever tribunal first obtained jurisdiction would retain such jurisdiction to the exclusion of the other. *See, e.g., Walker v. McNutt,* 165 Kan. 533, 196 P.2d 163, 168–69 (1948). While such holdings are an accurate reflection of the principal of comity in civil matters, they are rooted in the concept that at any given time only one judicial body may have jurisdiction over a single cause, act or matter. In contrast, criminal prosecutions are not necessarily confined to one jurisdiction, as a single act can constitute multiple criminal offenses.

■■■■■ When assessing jurisdiction in criminal matters, courts are governed by

the concept of dual sovereignty. Under that doctrine, even if we assume the elements of first-degree murder in Missouri are identical to those of the charge of murder that could have been brought against Bradley in Iowa, each state was free to prosecute the crime without regard to the other. *See Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387, 394 (1985). In defining its own criminal code, each state exercises its own sovereignty when determining what acts will constitute "an offense against its peace and dignity...." *Id.* at 89, 106 S.Ct. at 437–38, 88 L.Ed.2d at 394–95. Therefore, a single act delineated a crime by two different states is an offense against each, and may be punished by both. *Id.*

Enforcing its own criminal laws is a primary function of a state's sovereignty:

> To deny a State its power to enforce its criminal laws because another State has won the race to the courthouse "would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines." *Bartkus [v. People of State of Ill.],* 359 U.S. [121], at 137, 79 S.Ct. [676], at 685[, 3 L.Ed.2d 684](1959).

> Such a deprivation of a State's sovereign powers cannot be justified by the assertion that under "interest analysis" the State's legitimate penal interests will be satisfied through a prosecution conducted by another State. A State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of *its* own laws. Just as the Federal Government

has the right to decide that a state prosecution has not vindicated a violation of the "peace and dignity" of the Federal Government, a State must be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign interest. In recognition of this fact, the Court consistently has endorsed the principle that a single act constitutes an "offence" against each sovereign whose laws are violated by that act.

*Id.* at 93, 106 S.Ct. at 440, 88 L.Ed.2d at 397.

■ Clearly, under the holding of *Heath* and the principle of dual sovereignty, Missouri's prosecution for King's killing would not have barred Iowa's prosecution of Bradley for her murder. Even though *Heath* was decided within the context of the double jeopardy clause,[7] the rationale of the dual sovereignty doctrine is equally applicable to the concept that courts of one jurisdiction must give full faith and credit to decisions and judgments by a court of a separate and independent jurisdiction.[8] *See Turley v. Wyrick,* 554 F.2d 840, 842 (8th Cir.1977) (finding prosecution by a state following a federal acquittal did not deny full faith and credit to the decision of the federal court). By extension, Missouri's prosecution cannot stand as a bar to Iowa's enforcement of its own laws governing restitution by criminal offenders.

■ *V. Reasonable Ability to Pay.* Bradley now argues that the district court failed to determine his reasonable ability to pay costs, attorney fees and crime victim compensation program reimburse-

---

7. The Double Jeopardy Clause provides, in relevant part: "[N]or shall any person be subject for the same offence to be put twice in jeopardy of life or limb...." U.S. Const. amend. V.

8. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1.

ments. As this claim was not forwarded in his petition as a ground for granting his hearing request, it cannot now be urged as a reason why a Chapter 910 hearing should have been granted. *See State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997).

■ *VI. Inmate Account Deductions*. Bradley also forwards a claim that the restitution order will have the likely effect of taking money from his inmate account, in violation of his right to due process. Assuming the due process allegations in his petition were sufficiently specific to raise this particular argument, it is without merit. Bradley relies on *Walters v. Grossheim*, 525 N.W.2d 830 (Iowa 1994), for the proposition that he has a property interest in all funds in his inmate account and that any deductions of any of these funds without a prior Chapter 910 hearing will violate his constitutional right to due process.

This is a misstatement of the law, as *Walters* stands for the limited proposition that non-wage assets in an inmate account are accorded pre-deprivation due process protections, protections above and beyond what the Iowa Code provides in regard to prison wages. *Walters*, 525 N.W.2d at 832–33. The rationale underlying the *Walters* decision is keyed to the facts and circumstances surrounding withdrawal of non-wage funds from an inmate account and requires only a limited, administrative procedure. *Id. See also State v. Love*, 589 N.W.2d 49, 51–52 (Iowa 1998) (verifying that prisoners do not have a constitutional right to retain full amount of prison wages, and are not entitled to a pre-deprivation hearing regarding statutory deductions from such funds). It is not, as defendant suggests, a basis for granting a Chapter 910 restitution hearing, particularly when there is no allegation of any non-wage asset deprivation.

■ *VII. Reasonableness of Funeral Expenses*. Bradley also argues that the disparity in cost between the two funerals raises an inference that one bill is unreasonably high. This argument may provide a valid basis for setting a restitution hearing, but the district court's denial of such a hearing was an abuse of discretion only if the argument appeared on the face of the hearing request. The only references in the petition that can be construed in support of such an argument are the following: "no temporary order *of a reasonable amount* was given at time of sentencing" and "there was no itemized statement given at the time of sentencing or after and ... there is no reason why the Court should not have given a temporary order of restitution for 'ALL' restitutions to be paid, *rendering a reasonable amount.*" (emphasis added).

Although both statements do address the reasonableness of the restitution amount, it strains the bounds of legal construction to say these two generalized references equate to a reasonableness challenge appearing on the face of the hearing petition. When read in conjunction with the remainder of the motion, the gist of both claims is the district court's alleged failure to enter a "temporary" restitution order at the time of sentencing, an allegation without basis, as the sentencing order clearly required payment of restitution in general, attorney fees and court costs in particular. We cannot say the district court abused its discretion by failing to interpret the hearing request as contending the funeral expenses to be unreasonably high.

*Conclusion*. The district court was required to set a restitution hearing only if it

appeared from the face of the petition that such a hearing was warranted. None of the above arguments establish Bradley's right to a hearing, nor does any other ground forwarded in the petition provide such a basis. We therefore find no abuse of discretion in the district court's denial of Bradley's hearing request.

**AFFIRMED.**

ZIMMER concurs; SACKETT, C.J. concurs specially without opinion.