# IN THE SUPREME COURT OF IOWA

No. 09–0063

Filed September 17, 2010

**STATE OF IOWA,**

    Appellee,

vs.

**JEREMY FRANK JENKINS,**

    Appellant.

---

Appeal from the Iowa District Court for Webster County, Gary L. McMinimee, Judge.

Defendant appeals district court restitution order asserting there is no causal connection between the offense and the victim's injuries. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, and Ricki Osborn, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case we must determine the extent of the district court's discretion in ordering defendants to pay restitution to the Crime Victim Compensation Program. Citing precedent from the court of appeals, the district court concluded that it had no discretion in ordering restitution to the program. The court ordered the defendant to compensate the program for all monies previously distributed to the victim. The defendant appeals alleging that the instant criminal offenses were not the proximate cause of the compensated injuries.

### I. Factual and Procedural Background.

A Webster County jury convicted the defendant, Jeremy Frank Jenkins, of kidnapping in the third degree and assault with intent to commit sexual abuse. On March 19, 2008, the district court sentenced Jenkins as a habitual offender to an indeterminate term of imprisonment not to exceed fifteen years, with a minimum sentence of three years, for the kidnapping conviction and to an indeterminate term of imprisonment not to exceed two years on the sexual abuse conviction. The court ordered the sentences to run consecutively. The district court further ordered Jenkins to pay restitution to the victim if applicable. Because the amount of restitution was then unknown, the court ordered, "Any claim for restitution shall be filed with the Court within 30 days. If the parties cannot agree upon the amount of restitution, a hearing will be held."

Following sentencing, the Crime Victim Compensation Program (CVCP) of the Iowa Department of Justice submitted a claim in the amount of $946.60 to the Webster County Attorney's Office for payments it previously made to the victim. The claim included two payments for

lost wages totaling $899.60 and one payment of $47 for clothing and bedding replacement. The State moved for a restitution hearing.

The only witness called at the hearing was Ruth Walker, the restitution subrogation coordinator for the Crime Victim Assistance Division. Walker testified that the CVCP reimbursed the victim $659.20 for two weeks of lost wages following the criminal offense. The CVCP also reimbursed the victim $240.40 for one week of lost wages for preparation and attendance at Jenkins' trial. On cross-examination, Walker admitted that she was unaware that the victim was on unpaid leave from her job at the time the offense occurred. The victim had taken unpaid leave after Jenkins threatened her, but prior to the commission of the instant offenses. Walker testified that the CVCP reviews lost wage claims for "reasonableness" and accepts the employer's statement that the victim was "absent due to crime injuries."

After Walker's testimony, the State moved that Jenkins be ordered to pay restitution to the CVCP in the full amount requested—$946.60. Jenkins countered that the CVCP is only entitled to partial reimbursement. According to Jenkins, the program can reimburse victims in any manner it chooses, but can only receive restitution from offenders where the criminal offense is the proximate cause of the victim's injuries. Jenkins argued that some of the victim's lost wages were not causally connected to the instance offenses. He noted that prior to the commission of the offense, the victim took unpaid leave. The victim's absence from work, therefore, was not caused by the instant offenses. Finally, Jenkins asserted the victim's attendance at trial only caused her to miss fifteen hours of work and not an entire week. During the week of trial, the victim was scheduled to work from 3 p.m. to

11 p.m. According to Jenkins, the victim could have attended trial each day and then worked from 6 p.m. to 11 p.m.

The district court ordered Jenkins to pay restitution to the CVCP in the full amount of $946.60. Citing *State v. Bradley*, 637 N.W.2d 206 (Iowa Ct. App. 2001), the court held that it had no discretion to review a restitution order to the CVCP and that it was required to order restitution to the CVCP for all payments remitted to the victim, regardless of whether a "causal connection" existed between the criminal offense and the victim's injuries. Jenkins appealed.

## II. Standard of Review.

We review restitution orders for correction of errors at law. *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004). "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.' " *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

## III. Discussion.

**A. History of Criminal Restitution.** A proper interpretation of the Iowa statute requires an understanding of the context within which this statute was enacted. *See* Iowa Code § 4.6(2) (2007) (instructing the court to consider "[t]he circumstances under which the statute was enacted" in determining legislative intent); 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:1, at 7 (7th ed. 2008) (suggesting court "tak[e] into consideration the historical framework" of a statute when interpreting it). Because the historical framework of this law informs our search for legislative intent, we begin our discussion with a review of the historical development of criminal restitution.

Prior to the 1970s, restitution in criminal matters was generally imposed only as a condition of probation or parole. Matthew Dickman, *Should Crime Pay?*: *A Critical Assessment of the Mandatory Victims Restitution Act of 1996*, 97 Cal. L. Rev. 1687, 1688 (2009) [hereinafter Dickman]. Over recent decades, however, both federal and state governments, including Iowa's, have enacted statutes designed to increase the level of restitution to crime victims in response to a growing victims' rights movement. *See* 6 Wayne R. LaFave, et al., *Criminal Procedure* § 26.6(c), at 824 (3d ed. 2007) [hereinafter LaFave].

On the federal level, congressional activity in criminal restitution began with the enactment of the Victim and Witness Protection Act (VWPA) in 1982. Dickman, 97 Cal. L. Rev. at 1688. The VWPA expanded the discretion of federal judges to impose restitution obligations on criminal defendants. *Id.* In 1996, Congress strengthened restitution by passing the Mandatory Victims Restitution Act (MVRA). *Id.* In place of the discretionary VWPA regime, the MVRA made restitution mandatory in nearly all cases. *Id.*

Numerous states also enacted legislation related to restitution in state criminal proceedings. By the early 1980s, approximately two-thirds of the states had enacted some kind of statutory regime providing for victim compensation. Alan T. Harland, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts*, 30 UCLA L. Rev. 52, 59 (1982) [hereinafter Harland].

Several constitutional issues have arisen as a result of the restitution legislation. For example, arguments have been made that under either the Sixth or Seventh Amendment, a criminal defendant is entitled to a jury trial on all factual issues before restitution is imposed. *See generally* Melanie D. Wilson, *In* Booker's *Shadow: Restitution Forces*

*a Second Debate on Honesty in Sentencing*, 39 Ind. L. Rev. 379 (2006) [hereinafter Wilson] (asserting Sixth Amendment guaranties of right to jury trial and proof of guilt beyond a reasonable doubt apply in sentencing); Bonnie Arnett Von Roeder, Note, *The Right to a Jury Trial to Determine Restitution Under the Victim and Witness Protection Act of 1982*, 63 Tex. L. Rev. 671 (1984) (asserting right to jury trial under Seventh Amendment).

Most federal authorities reject the requirement of a jury trial for criminal restitution. *See* Wilson, 39 Ind. L. Rev. at 402. Even where procedural due process applies to the offender's loss of property resulting from restitution orders, the process that is required is ordinarily less than a full blown, trial-type evidentiary hearing before a jury. LaFave, § 26.6(c), at 825–26; *see also United States v. Sunrhodes*, 831 F.2d 1537, 1541–43 (10th Cir. 1987); *United States v. Palma*, 760 F.2d 475, 477–79 (3d Cir. 1985); *United States v. Satterfield*, 743 F.2d 827, 839–40 (11th Cir. 1984); *Franco v. State*, 918 A.2d 1158, 1162 (Del. 2007); *State in re D.G.W.*, 361 A.2d 513, 521 (N.J. 1976); *State v. Lack*, 650 P.2d 22, 29 (N.M. Ct. App. 1982); *State v. Tuttle*, 460 N.W.2d 157, 159–60 (S.D. 1990); *State v. Pope*, 321 N.W.2d 359, 361 (Wis. Ct. App. 1982); Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L. Rev. 931, 943 (1984) (arguing due process protections in regard to restitution are limited to notice and an informal process); Lorraine Slavin & David L. Sorin, *Congress Opens a Pandora's Box—The Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 Fordham L. Rev. 507, 544–63 (1984) (same).

In this case, Jenkins does not object to the nature of the hearing provided by the district court. The sole issue raised by Jenkins is whether, after hearing the evidence presented, the district court erred by

determining that it was foreclosed by law from making a judicial determination of the "causal connection" between the amounts paid to the victim by the CVCP and the defendant's criminal activity.

For the reasons expressed below, we conclude that the district court erred in failing to make a determination regarding the amount of damages caused by the criminal activity in this case. As a result, we remand the case to the district court for further proceedings.

**B. Iowa Statutory Framework.** Iowa Code chapter 910 generally provides the framework for imposition of the criminal sanction of restitution. Iowa Code section 910.1(4) defines the term "restitution." Restitution means the "payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution." Iowa Code § 910.1(4). "Restitution" also means "the payment of crime victim compensation program reimbursements" and other governmental expenses. *Id.*

Regardless of whether the restitution is made to the victim or to the government, imposition of restitution is mandatory under Iowa law. Iowa Code section 910.2 states, in relevant part, "In *all criminal cases* in which there is a . . . verdict of guilty, . . . the sentencing court *shall order* that restitution be made by each offender . . . ." Iowa Code § 910.2 (emphasis added). Thus, like the federal MVPA, judges have no discretion in Iowa to decline to impose restitution. Where the offender is not reasonably able to pay all or part of a CVCP reimbursement, however, the district court may allow the offender to perform community service. *Id.*

An offender is provided with notice of a potential restitution claim under the statute. Iowa Code section 910.3 requires the county attorney to "prepare a statement of pecuniary damages to victims of the defendant

and, if applicable, any award by the [CVCP]," and provide it to the presentence investigator or submit it to the court at the time of sentencing. *Id.* § 910.3. The court is then to enter an order setting "out the amount of restitution" and the persons to whom restitution is to be paid. *Id.*

In connection with restitution orders, a criminal defendant may challenge restitution at the time of sentencing and may file a timely appeal in the criminal case of any restitution order. *State v. Blank*, 570 N.W.2d 924, 925–26 (Iowa 1997). In addition, "[a]t any time during the period of probation, parole, or incarceration, the offender . . . may petition the court on any matter related to the plan of restitution or restitution plan of payment." Iowa Code § 910.7(1). A petitioner seeking to challenge a restitution award outside of a criminal appeal, however, is not automatically entitled to a hearing, but is granted a hearing only if the district court determines, based on the petition, that a hearing is warranted. *Blank*, 570 N.W.2d at 927; *State v. Alspach*, 554 N.W.2d 882, 883–84 (Iowa 1996). If the district court determines that a hearing should be held, the court has authority to modify the plan of restitution, the plan of payment, or both. Iowa Code § 910.7(2).

Iowa Code chapter 915 provides the framework for operation of what has been known as the CVCP. Under this statutory provision, the department of justice is authorized to award compensation for "economic losses incurred as a direct result of an injury to or death of the victim." *Id.* § 915.86. Included in compensable economic loss is "[l]oss of income from work the victim would have performed and for which the victim would have received remuneration if the victim had not been injured, not to exceed six thousand dollars." *Id.* § 915.86(2). Compensable economic loss also includes "[l]oss of income from work that the victim . . . would

have performed . . . where the loss of income is a direct result of . . . attendance at criminal justice proceedings including the trial . . . ." *Id.* § 915.86(4).

**C. Iowa Case Law Regarding Challenges to Restitution.** This court has not had occasion to consider the ability of an offender to challenge the factual determination by the CVCP that certain losses were caused by the crime and thus subject to payment to the victim and restitution from the offender. In *Bradley*, 637 N.W.2d at 210, however, our court of appeals considered whether a restitution order by the district court should include amounts paid by the CVCP for the funeral expenses of an out-of-state victim. In *Bradley*, there was no factual question that the funeral expenses paid by the CVCP were caused by the crime. *Id.* at 214 n.5. The issues presented on appeal were purely legal, namely, whether the district court's restitution order was timely, whether the requirement for restitution had been waived by the failure to include a restitution provision in a plea agreement, and whether restitution could be ordered for expenses arising out of a crime for which the defendant was charged in Missouri. *Id.* at 212–15.

The *Bradley* court rejected the offender's arguments. *Id.* While the court held that the restitution order was not timely filed under Iowa Code section 910.3, it also concluded that the timeliness requirement was directory, not mandatory. *Id.* at 212. The court further found that silence in a plea agreement did not in and of itself override the mandatory imposition of restitution and that the district court had jurisdiction to impose the order of restitution. *Id.* at 213–15.

As noted previously *Bradley* did not involve a factual challenge to causation with respect to payments made by the CVCP. *Id.* at 214 n.5. Nonetheless, the *Bradley* court, in dicta, declared that while the district

court is charged with finding proximate cause between the offender's activities and the victim's damages when ordering restitution to be paid directly to the victim, the district court is without authority to determine causation when funds are paid by the CVCP. *Id.* at 215. The court stated that no "discretion exists in regard to crime victim assistance payments" and that "[t]he district court is not only authorized but mandated to order restitution for these amounts, subject only to the offender's reasonable ability to pay." *Id.* This *Bradley* dicta was transformed into black letter law in subsequent unpublished cases. *See State v. Mott*, No. 08–1656, 2009 WL 1676974, *2 n.1 (Iowa Ct. App. June 17, 2009); *State v. Bertch*, No. 07–0492, 2008 WL 4725159, *3 (Iowa Ct. App. Oct. 29, 2008); *State v. Hoaglund*, No. 05–1104, 2006 WL 1897134, *1 (Iowa Ct. App. July 12, 2006). In two of these cases, however, the court of appeals, perhaps recognizing weakness in *Bradley's* dicta, held in the alternative that causation was in fact established in the record. *Mott*, No. 08–1656, 2009 WL 1676974 at *2; *Hoaglund*, No. 05–1104, 2006 WL 1897134 at *1 n.1.

The unpublished post-*Bradley* case law received further elaboration in *State v. Goyette*, No. 07–0300, 2008 WL 4308213 (Iowa Ct. App. Sept. 17, 2008). In *Goyette*, the court of appeals rejected a procedural due process challenge to the *Bradley* dicta. *Goyette*, No. 07–0300, 2008 WL 4308213 at *1–*2. The *Goyette* court noted that an offender could challenge such causation in the administrative process before the CVCP or in separate civil proceedings under Iowa Code section 910.7. *Id.* at *2. Therefore, the court did not find a constitutional infirmity. *Id.*

As a result of the above cases, under the current case law of our court of appeals, the factual question of causation of payments made by

the CVCP may not be challenged by an offender in a sentencing proceeding for purposes of determining the proper amount of restitution.

**D. Analysis.** While *Bradley* has been affirmed in unpublished court of appeals decisions in the past decade, this case presents a matter of first impression for this court. Based on our review of the statute and the applicable law, we conclude that while the district court has a mandatory duty to impose restitution under Iowa Code chapter 910, it may review CVCP payments to determine whether there is a causal connection with the underlying crime as required by Iowa Code section 915.86 in order to determine the proper amount of a restitution order. Our interpretation is consistent with ordinary sentencing procedures, is not inconsistent with the provisions of Iowa Code chapters 910 and 915, and provides defendants with a meaningful predeprivation remedy to challenge erroneous CVCP payments.

Under section 910.2, ordering restitution to the CVCP is mandatory, mitigated only by the defendant's reasonable ability to pay. The fact that restitution is mandatory, however, does not necessarily mean that the court is without authority to determine the *amount* of restitution. Indeed, the federal MVRA eliminates judicial discretion on the decision to impose restitution, but does not deprive courts of jurisdiction to determine the amount. *See* 18 U.S.C. § 3663(a)(1)(B)(i)(I) (2006) (authorizing court to determine the amount of the loss sustained by each victim as a result of the offense); *see also United States v. Reichow,* 416 F.3d 802, 805 (8th Cir. 2005) (causal link of mandatory restitution must be established).

As noted above, section 910.3 establishes a procedure to ensure that an offender receives notice in the presentencing process of the amounts that could be imposed as restitution, including payments made

by the CVCP.  Section 910.3 then authorizes the court to "set the amount of restitution."  There is nothing in the language of section 910.3 that suggests that the district court lacks the power to determine whether reimbursements made by the CVCP were, in fact, "caused" by the underlying criminal offense as required by Iowa Code section 915.86.

Further, denying Jenkins an opportunity to challenge the amount of the restitution order before the district court implicates his right to procedural due process.  The overwhelming weight of federal and state authorities agree that procedural due process in the context of criminal restitution orders requires some kind of notice and an opportunity to be heard.[1]  In addition, giving preclusive effect to determinations of the CVCP would give rise to a substantial issue regarding improper delegation of judicial authority.  *See* Harland, 30 UCLA L. Rev. at 94–96; *see also Morgan v. Wofford,* 472 F.2d 822, 827 (5th Cir. 1973) (delegation of power to set amount of restitution to probation officer without notice and opportunity to be heard held invalid); *State v. Summers,* 375 P.2d 143, 146 (Wash. 1962) ("It is an unlawful delegation of judicial authority to authorize the probation officer to fix the amount of the payments."). Although Jenkins has not raised due process or delegation of judicial authority challenges, when interpreting a statute we construe the language so as to avoid a constitutional infirmity where possible.  *In re Young,* 780 N.W.2d 726, 729 (Iowa 2010).

---

[1]Our analysis is not inconsistent with *State v. Izzolena,* 609 N.W.2d 541 (Iowa 2000).  In *Izzolena,* we determined that procedural due process was not offended by the failure to provide a hearing concerning the imposition of restitution in the amount of $150,000 in connection with a murder.  *Izzolena,* 609 N.W.2d at 552–53.  There was virtually no risk of error since the amount of restitution was liquidated and not subject to any factual determination other than the commission of the crime of murder, which was established beyond a reasonable doubt in the criminal trial.  *Id.* at 553.  Here, the amount to be awarded by the CVCP is not liquidated and is fact dependent, thereby triggering materially more substantial due process concerns than were present in *Izzolena.*

Recognizing the potential difficulty with procedural due process, the State suggests that Jenkins has an adequate avenue for contesting the amount of restitution, namely, an administrative challenge to the CVCP payment. The offender, however, is not a party to the CVCP proceeding. Further, under the applicable administrative rule, only a victim can appeal the amount of a CVCP payment. Iowa Admin. Code r. 61—9.36(1). Such an illusory remedy does not avoid the due process problem present in this case.

Although the State does not press the argument in this appeal, the *Goyette* court's suggestion—that any potential due process problem is avoided because the offender may file a postsentencing petition under Iowa Code section 910.7—is misplaced. While the offender may bring a claim under Iowa Code section 910.7, this is a postdeprivation remedy where a hearing is a discretionary matter, not a matter of right. In addition, an offender is not entitled to appointed counsel as a matter of right. *Alspach*, 554 N.W.2d at 883–84. A contingent postdeprivation remedy where the offender may be unrepresented does not give this court comfort in the context of procedural due process.

In any event, as a matter of statutory interpretation, it would make no sense to prevent an offender from directly challenging the causal connection of payments made by the CVCP in a sentencing proceeding under Iowa Code section 910.3, only to allow the offender to later make such a challenge in a petition under section 910.7.

In sum, while an order for restitution under Iowa Code section 910.2 to the CVCP is mandatory, we hold that the district court is not precluded from reviewing CVCP payments to determine whether the statutory causation requirements of Iowa Code section 915.86 have been met. Specifically, the district court may review whether there was a

sufficient causal link as a matter of fact between the loss of income paid by the CVCP and Jenkins' criminal activity as required by Iowa Code section 915.86(2) and (4). In light of our ruling, this case is remanded to the district court for a determination of whether the instant criminal offenses were the cause of injuries which were compensated by the CVCP.

### IV. Conclusion.

The decision of the district court is reversed and the case is remanded for further proceedings.

**REVERSED AND REMANDED.**