# IN THE SUPREME COURT OF IOWA

No. 18–1763

Filed May 22, 2020

**STATE OF IOWA,**

Appellee,

vs.

**EDDIE DONOVAN DeLONG,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cherokee County, David A. Lester, Judge.

Defendant appeals his restitution order. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER VACATED AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, and Ryan R. Kolpin, County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider whether a district court's restitution order based upon testimony and exhibits submitted by the Crime Victim Compensation Program (CVCP) was supported by substantial evidence. The district court granted the State's motion for restitution in the amount of $2740.95. The defendant appealed. For the reasons expressed below, we vacate and remand the matter to the district court.

## I. Factual and Procedural Background.

Eddie DeLong was convicted of sexual abuse in the third degree, a class "C" felony, while being a habitual offender, and supplying alcohol to a minor, an aggravated misdemeanor. Evidence offered at trial showed that DeLong provided alcohol to M.G., a minor. After M.G. consumed the alcohol and was lying on a couch, DeLong squeezed her breasts, rubbed her vagina, and pulled down her pants. M.G. at one point opened her eyes and looked at DeLong, who appeared surprised.

M.G. awoke around noon the next day, feeling sick. There was vomit on her left shoulder. Her vagina was sore, her underwear had blood on them, and her pants were on backward. M.G. did not immediately remember what had occurred, but later remembered the incident, told her mother about it, and DeLong was arrested. DeLong was convicted of both crimes after a jury trial and was sentenced by the court.

The district court set a restitution hearing. At the hearing on restitution, the State called Ruth Walker, the restitution subrogation coordinator with the Crime Victim Assistance Division in the State of Iowa Attorney General's Office, to testify. The State, through Walker, introduced two exhibits. Exhibit 15 was entitled "Claim Payment Summary" and provided an itemized statement of expenses, organized by category and date, paid by the CVCP. Exhibit 16 was a compendium of

what was labeled as "Medical & Mental Health Expense Verification Documents" to support the claim payment summary provided in exhibit 15. The total amount of restitution sought by the State was $2740.95.

Walker testified at the hearing about the process used by CVCP to determine whether to pay expenses. She testified that when CVCP receives an application, it requests billings and medical records from providers. According to Walker, when the information is received, a compensation specialist reviews the information and determines whether the CVCP should pay for the expenses. She told the court that if it is determined that the expense is crime related and CVCP can pay for it, then a payment is requested. Walker stated that the file then goes to another compensation specialist, who reviews it for quality control. If approved, Walker stated that the payment is then sent to the provider. Walker testified that this process was applied to all of the restitution sought by the State in its application in this case.

Aside from her general process testimony, Walker further testified that itemizations on the first two substantive pages of exhibit 15 showed that "[the CVCP] paid counseling and some medical expenses, which totaled $1,428.95." Walker further testified based on the itemizations on the third substantive page of exhibit 15 that "[the CVCP] also paid for the sexual assault exam that the victim had at Mercy Hospital in Sioux City, and that was $1,312."

Walker did not provide medical records to support the itemizations in exhibit 15. Walker explained that under Iowa Code section 22.7, she was required to keep such records confidential. But Walker explained that staff reviewed the medical records before including charges in exhibit 15.

Walker did not clearly explain the relationship between exhibits 15 and 16. She stated that in exhibit 16 she tried to put the documents in

order of service. Walker testified that the bills in exhibit 16 should theoretically add up to the payments in exhibit 15.

Exhibit 16 contains a mix of documents, including five documents entitled "Crime Victim Compensation Program Medical Expense Verification Form." The verification form asks the provider whether the services rendered were a direct result of crime. The provider is then asked to itemize the charges, including specifically any amounts paid by the patient. The verification form is then signed by a representative of the provider, who certifies that the information "in this treatment plan is true and accurate" and that the signatory is "currently licensed and in good standing in the State in which [he or she] practice[s]."

The first verification form in exhibit 16 relates to services provided by Cherokee Regional Medical Center on July 17, 2016, and is dated February 22, 2017. The verification form indicates the amount paid by the patient was $30. The question on the verification form which asked whether the services rendered were a direct result of crime was left unanswered by the medical provider. A handwritten notation adjacent to the question said "Per Ruth, CVC should pay." The verification form was signed by an authorized signatory of the provider. A statement for M.G. from the provider follows the verification form indicating a patient payment of $30.

A second verification form in exhibit 16 was submitted by Floyd Valley Hospital Family Medicine Clinic for services rendered on August 16, 2016. The question on the verification form that asked whether the services were directly related to the crime was answered in the affirmative. The verification form states that the amount paid by the claimant was $30. It is signed by a representative of the provider. The next page following

the verification form provides account information stating that the patient paid $30 for services on August 17, 2016.

A third verification form in exhibit 16 was submitted by Orange City Health System for services rendered September 12, 2016, and is dated April 24, 2017. The question on the verification form that asked whether services were directly related to the crime had N/A marked next to it. The amount paid by the client as indicated on the verification form is $80, with an unpaid balance of $70. It is not clear who owes the unpaid balance. The two pages following the verification form present billing detail for services on September 12 and indicate that the patient paid $80.

A fourth verification form in exhibit 16 was submitted by Family Solutions Services, Inc. dated May 5, 2017. The form was slightly different than other forms as it carried the title "Mental Health Expense Verification." This fourth verification form also does not state the services that were rendered, the date of the services, or whether the services were directly related to a crime. It indicates that the claimant paid $60 and that the provider is also "owed $92."

The next document following the May 5, 2017 verification form in exhibit 16 is entitled "Crime Victim Compensation Program Mental Health Treatment Plan" and is dated August 8, 2017. This document indicates that the presenting complaint was "symptoms of PTSD" and the diagnosis of record and brief description were "PTSD—symptoms related to sexual assault." A box is checked stating that the treatment was "a direct result of the crime on 5/30/2016." The date of the crime, however, was June 30, 2016. The document does not state who the patient is and is not signed by anyone. The next page in exhibit 16, however, is a September 15 account statement from Family Solutions indicating services on August 8,

August 15, and September 25 for M.G., with a "projected patient balance" of $120.

The fifth verification form was submitted by Floyd Valley Hospital Family Medicine Clinic signed December 19, 2017. The document does not list a date for services rendered. The unspecified services are said to be a direct result of crime. The document is signed by an authorized signatory. The next two pages in exhibit 16 are from an account information report of the provider that indicates that the claimant paid $60 out of pocket for the services.

In addition to the above documents, exhibit 16 contains a number of orphan documents that are not tethered to any verification form. There is a billing statement from Floyd Valley Healthcare dated August 9, 2016, for services rendered on August 5; another billing statement from Floyd Valley Healthcare dated September 19, 2016, for services provided on September 15 along with an adding machine tape with various notations; a third billing statement from Floyd Valley Healthcare dated January 5, 2017, for services rendered on January 1, 2017, and an accompanying adding machine tape; an itemized invoice from Remsen Ambulance dated January 12, 2017, for services rendered on January 1, 2017. None of these documents provide any statement that the charges were related to the crime. Some, like the Remsen Ambulance invoice, do not indicate what portions were the responsibility of M.G.

On this record, the district court entered an order approving of the restitution claim in its entirety in the amount of $2740.95. The district court relied largely on the testimony of Walker regarding how the CVCP processes requests for payment of medical services. The district court noted that medical records are not subject to release under Iowa Code section 22.7, as incorporated into crime victim restitution through Iowa

Code section 915.90. In light of the confidentiality provisions, the district court determined that the general process testimony offered by Walker, supplemented in a few places by her more specific testimony about a particular expense, was sufficient to support the restitution.

DeLong appealed. We transferred the case to the court of appeals. The court of appeals affirmed, noting that treatment provider verification forms indicated a direct causal connection, CVCP's review determined causal connection, and Walker testified the treatments were causally connected to the sexual assault.

We granted further review. For the reasons expressed below, we vacate and remand the matter to the district court.

## II. Standard of Review.

Restitution is a creature of statute and, as a result, restitution orders are reviewed for errors at law. *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010). "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.' " *Id.* (quoting *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004)).

## III. Discussion.

**A. Introduction.** Since the 1980s, nearly all states have enacted statutes providing for pecuniary restitution to victims. *Jenkins*, 788 N.W.2d at 643. The Iowa framework for criminal restitution is established in Iowa Code chapters 910 and 915.

Under Iowa Code section 910.1(4) (2017), restitution is defined as "payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution." "Restitution" also means "the payment of crime victim compensation program reimbursements" and other governmental expenses. *Id.*

Iowa Code section 910.3 requires the county attorney to "prepare a statement of pecuniary damages to victims of the defendant and, if applicable, any award by the [CVCP]." The statement is then provided as part of the presentence investigation or submitted to the court. *Id.* The court is then directed to enter an order setting out "the amount of restitution." *Id. See generally Jenkins*, 788 N.W.2d at 643–44.

Iowa Code chapter 915 provides the framework for the CVCP. Under chapter 915, the CVCP is authorized to award compensation for "economic losses incurred as a direct result of an injury to or death of the victim." Iowa Code § 915.86.

**B. Overview of Iowa Restitution Caselaw.** In *Jenkins*, we generally reviewed the history of criminal restitution and the Iowa statutory framework related to it. 788 N.W.2d at 642–44. There, we noted that restitution under the Iowa statute was not discretionary and that the state, upon a proper showing, was entitled to restitution. *Id.* at 644.

While the award of restitution is not discretionary, we held in *Jenkins* that the state must show a causal connection between the underlying crime and the amount claimed. *Id.* at 645. We declined to give preclusive effect to a determination made by the CVCP, noting that to do so would implicate the defendant's right to due process and give rise to a substantial issue regarding improper delegation of authority. *Id.* at 646.

In *State v. Shears*, 920 N.W.2d 527 (Iowa 2018), we reviewed our statutory restitution cases dealing with the causation requirement. We noted that the burden remained with the party claiming restitution to prove that the evidence supported the restitution claim. *Id.* at 536 (citing *State v. Holmberg*, 449 N.W.2d 376, 377–78 (Iowa 1989)). We canvassed a number of our cases that require that the party claiming restitution show "a direct causal relationship" between the crime and the economic loss.

*Id.* (quoting *State v. Hagen*, 840 N.W.2d 140, 148 (Iowa 2013)); *see also State v. Stessman*, 460 N.W.2d 461, 464 (Iowa 1990); *State v. Knudsen*, 746 N.W.2d 608, 610 (Iowa Ct. App. 2008).

A third recent case exploring the contours of restitution is *State v. Edouard*, 854 N.W.2d 421 (Iowa 2014), overruled on other grounds by *Alcala v. Marriott International, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016). In this sexual abuse case, restitution was sought for $12,956.74 in economic harm, including the cost of counseling. *Edouard*, 854 N.W.2d at 450. As in this case, the restitution subrogation coordinator testified in support of the restitution claim of $12,956.74. *Id.* The coordinator, as in this case, outlined the process in which the CVCP approves amounts for restitution. But, in addition

> the providers in question had attested in writing that *all of the treatments were related to the crime.* Each exhibit contained a form signed by the treatment provider that verified the treatments in question were "provided as a direct result of the crime."

*Id.* (emphasis added).

The statements from the providers offered at the restitution hearing were hearsay, of course, but the *Edouard* court emphasized that a hearing for restitution was not strictly subject to the rules of evidence. *Id.* Based on the record established at the restitution hearing, the *Edouard* court concluded that substantial evidence was presented in support of the restitution claim. *Id.* at 451.

**C. Positions of the Parties.** DeLong recognizes that restitution is mandatory in all criminal cases where there is a verdict of guilty. *See* Iowa Code § 910.2. He contends, however, that under *Jenkins*, the State must present sufficient evidence to show causation of the amount claimed. DeLong notes that Walker did not provide any details regarding how the

expenses were related to the crime, some of which were incurred more than six months afterwards. He notes that the victim testified at trial regarding her injuries and that, in light of that testimony, there is nothing in the record to support multiple emergency room visits, CT scans, radiology services, and lab tests that the State claimed were subject to restitution.[1]

The State responds that Walker testified at the hearing about the process utilized by the CVCP to determine whether amounts were subject to payment by the CVCP and that the payments adjudged for restitution in this case followed that procedure. The State recognizes, to some extent, the limitations of the verification forms, but suggests that the record, when considered as a whole, is sufficient to infer causal connection of the expenses. For example, the State notes that one of the documents indicated that M.G. had "PTSD—symptoms related to sexual assault." This notion, according to the State, shows a need for services on an ongoing basis and explains why services continued well after June 30, 2016, the date of the crime.

The State asserts that the case is controlled by *Eduourd.* The State claims that the evidence is nearly identical to that submitted in the case. According to the State, *Edouard* involved the need for mental health services that victims had sought as a result of Edouard's predatory sexual abuse.

---

[1]DeLong's appeal focuses on whether there was substantial evidence of causation sufficient to support restitution under the record developed at trial. He does not specifically raise a due process challenge to the constitutionality of Iowa Code section 915.90, either as applied or on its face. He argues instead that conclusory evidence of causation without medical detail is not substantial evidence under *Jenkins.* In addition, DeLong did not seek access to M.G.'s confidential records in the district court. As a result, we do not consider here any due process challenge to Iowa Code section 915.90.

**D. Application of Principles of Statutory Restitution in this Case.** We now turn to examining the claim for restitution in this case. At the outset, we observe that a mere statement by the CVCP coordinator that an expense is directly related to the crime is not substantial evidence but simply represents a conclusion that does not amount to substantial evidence in support of the restitution claim. Such a position would be inconsistent with the spirit, if not the letter, of *Jenkins*, which rejected the notion that whatever amount the State submitted for restitution must be approved.

On the other hand, in *Edouard* we emphasized that the rules of evidence do not strictly apply and that hearsay evidence from a medical provider to the effect that expenses were incurred as a direct result of the crime could, in fact, amount to substantial evidence when combined with testimony from the CVCP about the process in which the evidence was assembled.

Indeed, the CVCP has developed a "Crime Victim Compensation Program Medical Expense Verification Form" that appears to be designed for the very purpose of providing sufficient evidence of causation to support restitution in cases involving the provision of medical care. The verification form calls upon the medical provider to certify that the services rendered were "a direct result of crime." Further, the medical provider supplies the amount paid by the claimant, a necessary piece of information for restitution. The medical provider then certifies that the information provided is true and accurate. As seen in this case, an invoice is often attached to the verification form to provide documentation.

Ordinarily, when the record contains an expense verification form from a medical provider that reasonably identifies the service provided, identifies the cost borne by the victim, and verifies that the costs were

incurred as a direct result of crime, we think the claim is supported by substantial evidence. Such a three-pronged expense verification by a medical provider permits the State to make a showing of causation without violating the confidentiality provisions of Iowa Code section 915.90.[2] We see that as the essential teaching of *Edouard,* which noted that verification forms had been submitted for *all* expenses. 854 N.W.2d at 450–51.

Here, however, the amount supported by verification forms, properly filled out by the medical provider, is quite small. As noted above, some of the forms were not fully completed. For the vast majority of services that the CVCP claims were incurred as a direct result of the crime, the CVCP presented no verification forms to the district court. The amount of restitution supported by properly completed provider verification forms amounts to $242. If mileage claims for travel for these services is added to the total, the amount is $285.50.

So, the key question here is whether testimony about the general process conducted by the CVCP in evaluating potential restitution is sufficient. The district court found this general evidence to be substantial evidence on the causation issue. We think more is required. If the mere hearsay recitation by the State that its processes were followed were

---

[2]A person in possession or control of investigative or other information pertaining to an alleged crime or a victim filing for compensation shall allow the inspection and reproduction of the information by the department upon the request of the department, to be used only in the administration and enforcement of the crime victim compensation program. Information and records which are confidential under section 22.7 and information or records received from the confidential information or records remain confidential under this section.

A person does not incur legal liability by reason of releasing information to the department as required under this section.

Iowa Code § 915.90.

sufficient, a defendant would have no practical way to contest restitution. And, therefore the holding in *Jenkins* would be dramatically eroded.

We do not suggest, of course, that the use of a verification form is the only method of showing causation sufficient to support restitution. There are no doubt other means to provide evidence of causation beyond a particular form, including but not limited to direct testimony of a family member or a medical provider, other forms of documentation, or a combination of both.

But on the record here, we conclude that the CVCP fell short of establishing restitution in the amount of $2740.95. It is not enough for the CVCP to assemble a package of miscellaneous, incomplete documents, file them with the district court as a hodgepodge exhibit, and rely on a summary schedule of claimed expenses prepared by CVCP that lack specific support in the record.

When a restitution order is not supported by substantial evidence, we may determine the amount that is supported by substantial evidence. *See Holmberg*, 449 N.W.2d at 378; *State v. Starkey*, 437 N.W.2d 573, 575 (Iowa 1989). Based on our review of the record, we find the record supports only $285.50 in restitution. We remand the case to the district court to enter a restitution order in that amount.

## IV. Conclusion.

For the above reasons, the restitution order in this case is reversed and the case remanded for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER VACATED AND REMANDED.**