# IN THE COURT OF APPEALS OF IOWA

No. 19-1510
Filed January 27, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ELISHA M. MISCHKE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


        The defendant appeals from the restitution order entered following her guilty

plea to ongoing criminal conduct.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., Greer, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**POTTERFIELD, Senior Judge.**

Elisha Mischke was charged by trial information with ongoing criminal conduct. The trial information alleged that between July 2017 and January 2018, Mischke and two others, "individually, or by joint criminal conduct, or by aiding and abetting another" "commit[ted] multiple acts of residential burglaries, vehicle burglaries, vehicle theft, credit card fraud, identity theft, operating a motor vehicle without owner's consent, and possession of stolen property." As part of a plea agreement in which other charges and other criminal cases were dismissed, Mischke pled guilty to the class "B" felony. She was given a suspended, thirty-five year sentence and later ordered to pay $22,822.13[1] in restitution based on eleven separate claims.

On appeal, Mischke challenges the ordered restitution. First, she argues the district court erred in approving supplemental restitution requests that were

---

[1] Mischke was initially ordered to pay $24,547.13 based on twelve claims. The court ordered:
$8020.96 to Kiley
$6660.00 to Luanna
$2525.00 to Victor
$1870.00 to Michael or Emily
$1725.00 to Stevie
$1000.00 to Kimberly
$950.00 to Stew Hansen Dodge
$518.68 to Kevin
$400.00 to Trenton
$316.49 to Paul or Maria
$311.00 to Brody Baumann
$250.00 to Rick
After Mischke requested a restitution hearing contesting specific claims, the court dismissed the restitution ordered to Stevie, finding that no evidence was presented to prove he suffered $1725 in damages. (We purposely refer to those requesting restitution by only their first names).

untimely made. And second, she maintains the State failed to prove a causal connection between her criminal conduct and the restitution ordered.

## I. Standard of Review.

"We review restitution orders for correction of errors at law." *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010). "[W]e determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001).

## II. Discussion.

### A. Good Cause to Appeal.

Mischke contests the supplemental restitution order. The district court's ruling from which she appeals was entered on August 12, 2019, after Iowa Code section 814.6(1)(a)(3) (Supp. 2019) took effect on July 1. So Mischke needs good cause to appeal. *See State v. Damme*, 944 N.W.2d 98, 103 n.1 (Iowa 2020) ("The determinative date [in deciding whether to apply the amended statutes] is the date of the judgment of sentence that is appealed."). Because she challenges the court's determination regarding restitution—an extension of her sentence—the State concedes Mischke has good cause. *See* Iowa Code § 910.2(1)(a)(1) ("In all criminal cases in which there is a plea of guilty . . . , the sentencing court shall order that pecuniary damages be paid by each offender to the victims of the offender's criminal activities . . . ."); *see also Damme*, 944 N.W.2d at 105 ("[G]ood cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea."). And we agree. *See State v. Hutchcroft*, No. 20-0301, 2021 WL 2452153, at *1 n.1 (Iowa Ct. App.

June 16, 2021); *State v. Jauregui*, No. 20-0629, 2021 WL 1663598, at *1 n.1 (Iowa Ct. App. Apr. 28, 2021).

### B. Timeliness of State's Request.

First, we consider whether the State's delayed request for restitution should have been denied because it was untimely. Mischke was sentenced on August 20, 2018. The State filed nine victim pecuniary damage statements by that date but indicated on the record at the sentencing hearing that it did "not yet know the full extent of the restitution obligation." Then the State waited until April 12, 2019, to ask the court to amend the original sentencing order to include the requested restitution—$24,547.13 for twelve claims. The court did so the same day. Mischke moved the court to rescind the order, arguing, "It is inequitable and impermissible to make such a request nine months after the sentencing order was entered." She relied on Iowa Code section 910.3 (2018), which provided in part: "If pecuniary damage amounts are not available at the time of sentencing, the county attorney shall provide a statement of pecuniary damages incurred up to that time to the clerk of court. The statement shall be provided no later than thirty days after sentencing."

Following a hearing and written arguments, the district court denied her request, concluding the thirty-day deadline in the statute was directory rather than mandatory.[2] *See State v. Bradley*, 637 N.W.2d 206, 212 (Iowa Ct. App. 2001)

---

[2] "The difference between mandatory and directory statutes is the consequence of failing to perform the duty which is imposed. 'The failure to perform a mandatory duty will invalidate subsequent proceedings, while the failure to perform a directory duty will not invalidate the subsequent proceedings unless prejudice is shown.'" *Hogg v. City of Cedar Rapids*, No. 20-1175, 2021 WL 5475589, at *4 (Iowa Ct. App. Nov. 23, 2021) (citations omitted).

("We agree that the statement of pecuniary damages was not timely filed. The funeral expenses were initially incurred prior to sentencing, in 1994, yet were not reported to the court until the State's 1997 request. . . . This failure by the State is not an automatic bar to the district court's order, however, as 'the thirty-day requirement in section 910.3 is merely directory and not mandatory.'" (quoting *State v. Blakley*, 534 N.W.2d 645, 648 (Iowa 1995) (footnote omitted)), *overruled on other grounds by State v. Jenkins*, 788 N.W.2d 640, 647 (Iowa 2010). For the court to deny the State's request for restitution based on untimeliness, Mischke also had to show she was prejudiced by the delay, which she failed to do. *See Bradley*, 637 N.W.2d at 213 ("[T]he State's failure to comply with the thirty-day requirement 'will not affect the validity of subsequent proceedings unless prejudice is shown.'" (citation omitted)).

Here on appeal, Mischke argues the district court was wrong to conclude she did not establish prejudice. She argues she was prejudiced by the long delay between her sentencing and the State's request for restitution because she had different counsel for the two proceedings and the delay made it difficult for her to "meaningfully recall and accurately convey the differences between the facts originally alleged as compared with those [to which] she ultimately pled guilty." But this was not the argument Mischke made to the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

To the district court, Mischke seemed to argue an eight-month delay was inherently prejudicial. While the delay was lengthy and unexplained, Mischke was

not blindsided by the late restitution request, as her counsel argued. The State filed nine of the twelve victim pecuniary statements before Mischke pled guilty. So for the most part, Mischke was aware of the victims who were asking for restitution, the amount to which they believed they were entitled, and their justification for their claim before she pled guilty. And Mischke referenced the restitution she expected to owe several times throughout the proceedings. At the sentencing hearing, through her attorney, Mischke used the anticipated restitution as a reason she should be given a suspended prison sentence and have her fines suspended, arguing:

> She has obtained significant employment through Burger King, and she just informed me today that she is now going to be a general manager at a Burger King . . . . So that's significant to pay all the restitution that's going to be owed in this particular case. . . .
> So as the [presentence investigation report] recommends, it recommends a suspended sentence, I would ask the Court to give my client a suspended sentence. In terms of fines, I would ask the fines be suspended due to the significant restitution that she's going to be owing and also that the Court make a finding that due to the significant restitution that will be owing, as well as any jail costs that she owes, that her ability to repay court-appointed attorney fees be set at zero dollars or $100.

And the court referenced the "anticipated restitution" and Mischke's "significant obligations in terms of making restitution" while imposing sentence. Even at the hearing to challenge the restitution order, Mischke told the court:

> I believe that I probably do owe restitution in this matter because I did take a plea bargain in the charge. I don't feel that I did a lot of the things that were in this crime, but it is a joint [criminal conduct and aiding and abetting] case, and I take responsibility for that fact that I did take a plea to this charge.

Mischke did not prove she was prejudiced by the State's delay in requesting restitution be ordered.

In the alternative, Mischke asks us to reevaluate whether the thirty-day requirement is mandatory, given recent case law of *State v. Gross,* 935 N.W.2d 695 (Iowa 2019). In *Gross*, our supreme court considered section 356.7, which gives a sheriff the option to request jail fees from a defendant as a civil judgment rather than as part of the restitution order. 935 N.W.2d at 70–01. In its holding, the court decided that because the sheriff chose to pursue jail fees as part of a civil judgment, the court was not required to apply the reasonable-ability-to-pay analysis that would have been required under a chapter 910 restitution request for jail fees. *Id.* at 703–04. As we understand Mischke's argument on appeal, she believes the supreme court interpreted the language of section 356.7 to use "shall" in a mandatory sense, and she believe this use of "shall" should impact our understanding of the use of "shall" within section 910.3. Even if Mischke is right as to the supreme court's interpretation of section 356.7, we are not convinced that requires us to reinterpret section 910.3. So we cannot say the court erred in granting the State's request for restitution approximately eight months after Mischke was sentenced.

**C. Causal Connection.**

Mischke challenges the causal connection between her criminal activity and all but $940.33 of the restitution ordered. She admits on appeal that the proper showing was made as to part of Kiley's claim for restitution.

"[F]or criminal restitution to be proper, there must be 'a causal connection between the established criminal act and the injuries to the victim.'" *State v. Shears*, 920 N.W.2d 527, 534 (Iowa Ct. App. 2018) (citation omitted). And "[i]t is the burden of the State, . . . not the defendant, to prove the amounts of damages

causally connected the criminal act." *State v. Tutor*, 538 N.W.2d 894, 897 (Iowa Ct. App. 1995).

We acknowledge that the record before us is muddied as to exactly what actions Mischke and her co-defendants took as part of the ongoing-criminal-conduct conviction. The charge itself alleged Mischke, either individually, by way of joint criminal conduct, or through aiding and abetting, committed "multiple acts of residential burglaries, vehicle burglaries, vehicle theft, credit card fraud, identity theft, operating a motor vehicle without owner's consent, and possession of stolen property." Mischke's admissions during the plea colloquy were rather limited:

> THE COURT: Okay. Did you, during that time period, engage with anyone in committing the crimes of burglary, credit card theft, identity theft during that time period?
>
> MISCHKE: Your Honor, I was in possession of stolen property from car burglaries regarding another defendant in the case, so I was in possession of stolen property. That was the predicate offenses for my ongoing criminal conduct, so I participated in the ongoing criminal conduct.
>
> THE COURT: How many crimes do you think you committed during that time period yourself or with someone else?
>
> MISCHKE: I had possession of the stolen property of—regarding identification and social security card of a victim, and I resided in the house where, you know, I would say other defendants in the case also had possession of stolen property and had stolen cars.
>
> THE COURT: So is my understanding that property, identity theft, and all this—these goods that were in the house, they were not from one crime but they were from several?
>
> MISCHKE: Yes.
>
> THE COURT: So there are more than one victim; is that right?
>
> MISCHKE: I believe there is more than one victim, yes.
>
> THE COURT: Did you intend to gain anything financially by having these stolen items in your possession? . . . How did you intend to do that? Sell it? Trade?
>
> MISCHKE: Probably trade items, Your Honor.
>
> . . . .
>
> PROSECUTOR: Ms. Mischke, specifically we're accusing you, . . . Zachary Rich and Jeremy McDowell of committing credit card fraud. Do you understand that?

MISCHKE: Yes, Your Honor.

PROSECUTOR: In fact, you assisted Jeremy McDowell in committing credit card fraud. Would you agree with that?

MISCHKE: In committing credit card fraud, . . . my part in any of that was I sat in a car and I drove a vehicle to a gas pump, and the card was swiped by Zachary Rich.

PROSECUTOR: And you knew that the card that Zachary Rich was going to swipe was a stolen credit card; is that right?

MISCHKE: Yes, I did.

. . . .

PROSECUTOR: Now, on one occasion, too, the State alleges that you took possession of the identification of Kiley . . . . Are you familiar with that allegation?

MISCHKE: Yes, I am.

PROSECUTOR: And on one occasion, the State alleges that you took a stolen check from Kiley . . . and cashed it at Walmart in Windsor Heights. Are you familiar with that?

MISCHKE: I've heard that in the trial information. I did have possession of her identification and of her social security card.

. . . .

PROSECUTOR: Did you assist Jeremy McDowell in using identification or credit cards that were stolen?

MISCHKE: I did not assist Jeremy McDowell. I assisted Zachary Rich in using the credit cards at the gas station.

. . . .

DEFENSE COUNSEL: . . . What was your involvement with the identification of Ms. Fleming?

MISCHKE: I possessed stolen property—or her stolen identification and her Social Security card. I participated in setting up a credit card under her name, and items were purchased that were mailed to the house, clothing items.

. . . .

DEFENSE COUNSEL: Now, it's my understanding that there were multiple vehicle thefts that occurred during this period of time, July 2018 through January 2018; is that correct?

MISCHKE: December and January, correct.

DEFENSE COUNSEL: Okay. Now, these car thefts, would it be correct to say that Jeremy and Zach would these car thefts and bring the vehicles to the house?

MISCHKE: On multiple occasions, yes.

DEFENSE COUNSEL: Okay. And you knew about it; correct?

MISCHKE: Yes, I did.

DEFENSE COUNSEL: And from the inside of those vehicles, did Jeremy and Zach bring items from the owners of the vehicle inside the house?

MISCHKE: Yes, they did.

DEFENSE COUNSEL: And you knew about that too?

MISCHKE: Yes, I did.

DEFENSE COUNSEL: Did you do anything to stop that?

MISCHKE: No, I did not.

. . . .

DEFENSE COUNSEL: And you did not stop Jeremy and Zach when they were bringing contents of vehicles, identifications or, I think, purses or wallets that were found inside the vehicles?

MISCHKE: I did not stop them, no.

DEFENSE COUNSEL: And, in fact, I believe the reports would indicate that on some occasions the contents of the vehicles that were taken by Zachary or Jeremy were then used to commit credit card fraud; is that correct?

MISCHKE: That is correct.

. . . .

DEFENSE COUNSEL: And this occurred on an ongoing basis, from your testimony, from December of 2017 through January of 2018?

MISCHKE: The beginning of December, yes, until the end of January. And there was other incidences throughout April. . . . The ongoing criminal conduct was charged in March, I believe that's the exact time I was arrested for that, but there was the credit card situation that took place on April 13. I was arrested again, and I was—I wasn't in possession of the ID and them, but they did find stolen items, like clothing items, that were involved with the credit cards and in the house on April 13 as well, so that—from December until then, I would extend it, I agree that that's the correct time.

. . . .

PROSECUTOR: What items were you in possession of in the house after Jeremy and Zachary brought the items into the house?

MISCHKE: I was in possession of identification, social security cards, I possessed a purse that was involved, and I'm not sure specifically what car theft it was but there was a wallet as well.

PROSECUTOR: What did Jeremy and Zach intend to do with all these items after they brought them into the house?

. . . .

MISCHKE: I believe they traded them for drugs and used substances. You know, obtained drugs and things with them. I don't know.

PROSECUTOR: Did you benefit from trading these items for drugs or money?

MISCHKE: Drugs—I benefited from purchasing drugs with them.

PROSECUTOR: You used drugs with them from the use of the stolen property; is that correct?

MISCHKE: That's correct.

But we note the minutes of evidence attached to the trial information charging Mischke include spreadsheets and notes detailing more than sixty victims with items, vehicles, or payment methods stolen from them. *See State v. Benedict*, No. 14-1496, 2015 WL 3876796, at *4 (Iowa Ct. App. June 24, 2015) ("Benedict's plea of guilty to the assault *and the minutes* in reference to the assault *are properly considered in determining any restitution owed* as a result of the assault." (emphasis added)).

When Mischke filed a motion challenging the restitution the court ordered in April 2019, Mischke was told to identify the specific pecuniary claims she was contesting. Mischke listed only Kiley, Luanna, Victor, and Stew Hanson Dodge.[3] And then, in regard to Luanna's request for $6600 in restitution, Mischke testified at the restitution hearing, "I'm not objecting to her list except for the fact that the prices on some of the items, they were averages. . . . I didn't dispute her claims on the items or, you know, what she wrote down or what was missing." Mischke asked the court to "just review" "[t]he value of some of the items" Luanna listed. Mischke also clarified that her challenge to Victor's claims were that police reports indicated those items—including car seats and cell phones—had been recovered. But Victor testified he never received the items from the police, and after the State argued items like car seats and cell phones generally have to be replaced by victims immediately—they cannot wait to see if the police will recover the items and what condition they would be returned in—Mischke's attorney told the court during argument, "[Mischke] certainly would understand things such as the car seat

---

[3] Mischke also challenged restitution for Stevie, and she was successful in that challenge, so his restitution is not an issue on appeal.

that [was] referenced. If you don't have a car seat, you can't wait until somebody finds your car seat; you need to a get a new [one]." And after hearing the testimony of the representative from Stew Hanson Dodge, Mischke testified she was "not disagreeing with the dollar amount based on their estimates and, you know, the labor and stuff for the—No, I'm not." Mischke did not challenge causation as to any of these claims, and she largely abandoned the challenges she did raise by the end of the restitution hearing.

Mischke's only challenge as to the causal relationship between her and her co-defendants' criminal acts and restitution was for the $5000 bicycle Kiley claimed was missing. Mischke testified she was challenging restitution for Kiley's bicycle because she "believe[d] that the bicycle wasn't stolen from, you know, any of us or it was even—I never even heard about the bicycle until this hearing." Mischke clarified she believed the claim for the stolen bicycle, made months after the initial police reports were made, was a fabricated request. Mischke conceded her co-defendants were in and had stolen stuff from Kiley's car and garage and admitted she used the identification in Kiley's purse to open credit cards and order items in Kiley's name. Mischke just contested whether the claimed bicycle was one of those items.[4] So the question of the bicycle came down to whether the court found Kiley credible when she testified that she had received the bicycle from a friend and did not notice it was missing until later—when spring arrived and she went to ride it. The district court, in ordering Mischke to pay the full amount of restitution

---

[4] Mischke testified she "didn't believe that [co-defendant] Zach had entered the side of the vehicle," claiming the open back hatch of the vehicle was how they entered the vehicle.

requested by Kiley, found the claim for the stolen bicycle credible. We defer to the district court's credibility findings and find there is a casual link between the ongoing criminal conduct and the missing bicycle. *See State v. Williams*, No. 15-1194, 2016 WL 1359060, at *2 (Iowa Ct. App. Apr. 6, 2016) (agreeing with district court's credibility determination when defendant challenged a restitution order, admitting he took some of the items listed for restitution but denying he stole others, and the district court—finding defendant's testimony lacked credibility—ordered restitution on all missing items).

But we think, on the record before us, that Mischke waived her challenge to the causal connection between her criminal acts (including those she committed by joint criminal conduct and aiding and abetting) and the restitution ordered—except the claim she should not be obligated to pay for the $5000 bicycle, which we find is supported by a causal connection. While it is the State's burden to prove the causal connection between Mischke's criminal act and each of the ordered items of restitution, Mischke never raised the issue below. She requested a hearing on the ordered restitution, but then limited her challenge to just the restitution owed to Kiley, Luanna, Victor, and Stew Hanson Dodge. At the hearing, she did not challenge causation; she initially focused on whether the stolen items had been recovered and returned—not whether it was the underlying criminal actions supporting the ongoing-criminal-conduct conviction that caused the loss. And then, after the witnesses testified they had not received the recovered items or had to replace them anyway, Mischke largely gave up her challenges during her own testimony and in argument to the court.

Reaching the merits of Mischke's arguments as to the causal connection on this record would give Mischke the benefit for remaining silent throughout the restitution proceedings. *See State v. Jensen*, 66 N.W.2d 480, 484 (Iowa 1954) ("[A] party may not sit by and permit the court to commit inadvertent error without protest, and then complain for the first time . . . in the appellate court."); *see also Blakely*, 534 N.W.2d at 649 (finding defendant waived argument "the State failed to present any evidence that the victim or crime assistance program was entitled to restitution," so the State was not required to "put on its whole case regarding restitution"). Plus, besides admitting multiple times that she owed a large amount of restitution, Mischke relied on the fact in arguing for a suspended prison sentence and suspended fines—a fact that seemed to persuade the district court. We are not convinced Mischke should now be able to reverse course. *See State v. Duncan*, 710 N.W.2d 34, 43 (Iowa 2006) ("A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." (citation omitted)); *see also State v. Dains*, No. 00-0620, 2001 WL 1451125, at *4 (Iowa Ct. App. Nov. 16, 2001) ("In fact, it was Dains's position at sentencing that he should not be incarcerated because he would then be unable to pay restitution to [the victim]. The State contends, and we agree, Dains may not now claim the restitution order he fully agreed to is illegal and void.").

In the alternative, Mischke asks us to find her restitution counsel breached an essential duty and prejudiced her by failing to preserve an argument as to the causal connection between Mischke's actions and the restitution ordered. But Iowa Code section 814.7 (Supp. 2019) prevents us from deciding claims of

ineffective assistance on direct appeal. Mischke challenges the constitutionality of section 814.7, arguing the statute violates separation of powers and due process. These arguments have already been rejected by our supreme court. *See State v. Tucker*, 959 N.W.2d 140, 151 (Iowa 2021) (""[S]ection 814.7 does not violate the separation-of-powers doctrine."); *State v. Treptow*, 960 N.W.2d 98, 108 (Iowa 2021) ("There is no due process right to present claims of ineffective assistance of counsel on direct appeal."). Additionally, Mischke argues the statute violates her right to equal protection by "singl[ing] out for disparate treatment those wrongly-convicted and wrong-sentenced defendants who assert a violation of their constitutional rights to effective assistance of counsel." As a threshold matter in an equal-protection challenge, the party challenging the statute has to show "the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law." *Treptow*, 960 N.W.2d at 104. We are unsure who Mischke argues she is similarly situated to but that the law treats differently—those who were "rightfully" convicted and sentenced? But the statute itself does not draw that distinction. *See id.* at 105 ("[D]efendant contends section 814.7 makes an unlawful distinction between those who received effective assistance of counsel during plea proceedings and those who did not. We are not sure what to make of this argument. The statute makes no distinction between classes of persons in this regard."). "In any event, those asserting claims other than a claim of ineffective assistance of counsel are not similarly situated to those asserting claims of ineffective assistance of counsel." *Id.* at 106. Mischke's equal protection challenge fails.

While we cannot decide Mischke's claim of ineffective assistance on direct appeal, we also cannot preserve it because postconviction law specifically excludes restitution actions. *See* Iowa Code § 822.2(1)(g) (allowing a person convicted to institute a proceeding for a conviction or sentence subject to collateral attack "except alleged error relating to restitution, court costs, or fees under section 904.702 or chapter 815 or 910"). And we must reject Mischke's request for plain error review. *See, e.g.*, *Treptow*, 960 N.W.2d at 109 ("[The defendant argues] this court should adopt plain error review. We are disinclined to do so. We have repeatedly rejected plain error review and will not adopt it now."). However, we note Mischke retains the right to challenge her plan of restitution[5] under section 910.7 (2021).

The thirty-day requirement to request restitution is directory, not mandatory, and Mischke did not establish she was prejudiced by the delayed restitution request. We do not reach Mischke's challenge to the causal connection between the restitution ordered and her criminal acts, except her challenge to the missing bicycle, which we find is causally related. We affirm the ordered restitution of $22,822.13 based on eleven separate claims.

**AFFIRMED.**

---

[5] "'Plan of restitution' means a permanent restitution order, restitution plan of payment, or any other court order relating to restitution, or any combination of the foregoing." Iowa Code § 910.1(9).