# IN THE COURT OF APPEALS OF IOWA

No. 21-0934
Filed February 7, 2024

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MICHELLE LEE BOAT,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Marion County, Patrick W. Greenwood, Judge.

The defendant appeals her conviction and sentence for murder in the first degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Michelle Boat appeals from her conviction and sentence for murder in the first degree. She argues the district court abused its discretion when denying her motion to strike a potential juror for cause, should have granted her motion for mistrial based on prosecutorial error because the State encouraged the jury to consider punishment during its closing argument, and misapplied the law when determining her reasonable ability to pay restitution during sentencing by considering assets not subject to execution. Finding no abuse of discretion or sentencing error, we affirm.

**I. Background Facts and Proceedings.**

Boat was charged with murder in the first degree in the May 18, 2020 death of Tracy Mondabough. Mondabough—who was the paramour of Boat's estranged husband—died of a stab wound to the chest, which she suffered while still belted in the driver's seat of a truck as it was parked outside her home in Pella.[1] Surveillance video showed Boat's vehicle following Mondabough's vehicle for nearly an hour before the altercation, and a neighbor identified a vehicle matching the description of Boat's leaving the area after the altercation. Other physical evidence also supported a determination Boat was the killer: the finger-portion of a disposable glove found at the scene was determined to come from a glove that was later found stuffed in the top tank of a toilet at Boat's home, and Mondabough's DNA was found in the tank's water; Boat's hair was found on the truck steering

---

[1] The truck was registered to Boat's husband.

wheel and in Mondabough's hand; and Mondabough's blood and hair were found on Boat's car.

At the jury trial in May 2021, Boat conceded she fatally stabbed Mondabough but argued the facts supported a conviction for manslaughter rather than murder. Testifying in her own defense, Boat denied having any plan to kill Mondabough; she claimed she followed Mondabough home to learn where her husband was staying. And she pulled in beside Mondabough and walked up to the truck with the intention of telling Mondabough to leave her husband so he would return to her; when Boat walked up and opened the truck door (while wearing disposable gloves), Mondabough "started hitting [her] and screaming at [her], calling [her] a crazy bitch." Boat had a knife sitting on her passenger seat because—since her husband left her—she felt like she no longer had anyone to protect her. According to Boat:

> A. We were—she was hitting me and hitting me and hitting me, and I had my hands up. She's yelling at me, and I just—I just stabbed. And I grabbed the knife, and I just stabbed her. And I dropped the knife and I went around back around the car and went home.
> . . . .
> Q. Where—in the car when you pulled up next to Tracy that day, where was the knife? A. It was on the seat.
> Q. On the passenger seat? A. Yes.
> Q. When you turned to get the knife, how did you grab it? A. I don't know. I had—I just—just turned like this because I had—my eyes were closed and my glasses had fallen off, so I couldn't really see anything, so I just turned and grabbed.

Boat admitted she immediately went home, put her bloody clothes in the washing machine, took a shower, and hid the disposable gloves in the top tank of the toilet before answering the door to police officers' knock. And when the police asked

her if she stabbed Mondabough, she lied, claiming she had not seen Mondabough in months.

The jury found Boat guilty of murder in the first degree. The district court later sentenced her to life in prison and imposed fines and restitution, including a finding that she had a reasonable ability to pay $6673.75 in category "B" restitution.

Boat appeals.

## II. Discussion.

### A. Motion to Strike Juror.

Boat challenges the district court's denial of her request to remove a potential juror for cause.[2] "We review the district court's rulings on challenges to potential jurors for cause for abuse of discretion." *State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017). And "[t]he district court is vested with broad discretion in such rulings." *Id.* at 571. Only if the district court abused its discretion in refusing to strike for cause the potential juror and prejudice resulted, then the defendant is entitled to a new trial. *Id.*; *see also State v. Linderman*, 958 N.W.2d 211, 218–19 (Iowa Ct. App. 2021).

Here, Boat moved to strike the potential juror for cause during voir dire questioning, and the district court denied her motion. Then, during jury selection, Boat exhausted her peremptory strikes—using one to strike the potential juror 2. After exhausting her peremptory strikes, Boat requested an additional peremptory strike and identified the juror she wished to strike. Following our supreme court's ruling in *Jonas*, because the district court denied Boat's request for an additional

---

[2] We refer to the potential juror as "juror 2," which is a reference to the numbering system used during the jury selection process.

strike, we presume prejudice if the court abused its discretion in the earlier denial of the motion to strike juror 2 for cause.[3] *See* 904 N.W.2d at 583 (establishing a three-prong test to presume prejudice in juror-disqualification appeals); *Linderman*, 958 N.W.2d at 219 (explaining the "three prongs in *Jonas*" as being met when the defendant (1) "moved to strike [prospective] juror A for cause, which the court denied; (2) . . . requested the court grant an additional peremptory strike; and (3) . . .identified a separate juror [the defendant] would have used the peremptory strike on had the court dismissed prospective juror A for cause")*.* So, our focus is on whether the district court abused its discretion in denying Boat's request to dismiss juror 2 for cause.

The court should grant a motion to strike a juror if "the juror holds such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993); *see also* Iowa R. Crim. P. 2.18(5)(k) (allowing a challenge for cause when the juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial"). During jury voir dire, juror 2 said she was a witness at the trial for her ex-husband's murder about fifteen years earlier.

---

[3] The State asks us to overrule the presumption of prejudice established in *Jonas*, 904 N.W.2d at 583, arguing it "grants an incongruous remedy" because it allows a defendant to "get the windfall of a new trial without demonstrating" the juror the defendant maintains they would have stricken with their additional peremptory challenge "was unfair or biased and without any harm to [his] or her right to a fair and impartial jury." However, "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

Defense counsel then had the following exchange with her outside the presence of other potential jurors:

> DEFENSE COUNSEL: Does it concern you that it might be difficult for you to sit and listen to witnesses and facts in a murder case, with your own personal experience?
> JUROR 2: Possibly, yes.
> DEFENSE COUNSEL: What are your concerns?
> JUROR 2: I don't know. I just—I don't know. It would just be hard.
> DEFENSE COUNSEL: Would it be difficult for you emotionally?
> JUROR 2: Yes.
> DEFENSE COUNSEL: Do you think it would be difficult for you to set your own experiences aside entirely?
> JUROR 2: That I don't know. I don't know if I would be able to do that or not.
> DEFENSE COUNSEL: Do you think, then, not being able to do that might affect your ability to listen fairly and impartially and with your full attention?
> JUROR 2: It could. I just don't know.
> DEFENSE COUNSEL: Have you been a juror before?
> JUROR 2: No.
> DEFENSE COUNSEL: Have you formed any opinion about this case?
> JUROR 2: From just bits and pieces that I've heard, kind of.
> DEFENSE COUNSEL: What have you kind of—
> JUROR 2: Just from what I've heard on the news, mainly, I guess.
> DEFENSE COUNSEL: And from what you've heard, has that let you form an opinion about this case?
> JUROR 2: Yes, I have.
> DEFENSE COUNSEL: And that would make it hard for you to be fair and impartial, then, would you agree?
> JUROR 2: Yes.
> DEFENSE COUNSEL: That coupled with your own experience of your ex-husband having been a murder victim?
> JUROR 2: Yes.
> DEFENSE COUNSEL: And you having actually had to testify in his murder trial?
> JUROR 2: Yes.

Boat then moved to strike juror 2 for cause. Before ruling on Boat's request, the district court gave the prosecutor the chance to speak with juror 2, and the following exchange took place:

> PROSECUTOR: I just want to be clear. I want you to be clear because we can't speak for you. No matter what the evidence was or wasn't in this case, you would vote a particular way right now no matter what happened. Is that what you're telling us?
> JUROR 2: Right now?
> PROSECUTOR: Well, let's start there. No evidence has been presented. Not one witness, not one exhibit, not one anything. The Court's going to instruct all the jurors, and you might be one of them, that they're to base their verdict just on evidence that comes in in court and his instructions and nothing else. All right? So that's what we mean by can you be fair. And so you've heard this and that about this case, but all jurors may have heard a little something about this case. But that's not evidence. And whatever they heard can't be considered unless it's also evidence in the case. Do you understand the difference?
> JUROR 2: Yeah.
> PROSECUTOR: So the question is, is can you do that despite what you've heard in the past, put it aside, wipe the slate clean, and base your verdict only on the evidence you hear in court?
> JUROR 2: I think so.
> PROSECUTOR: Okay. And if there should be some fact or thing that you heard outside of court before today, that doesn't come in. No witness talks about it. No exhibit shows it. There's zero evidence of it. Will you, as part of your oath that you have to take, promise not to consider it at all yourself? That's part one, not consider it. It's not evidence. Could you do that?
> JUROR 2: I think so. I think so.
> PROSECUTOR: All right. And the next step is, also not discuss it with anybody else who's on the jury.
> JUROR 2: Yes.
> PROSECUTOR: Could you do that? And so, not weigh it for yourself and not say, oh, I know nobody talked about this fact in court but I heard blah, blah, blah, blah, blah, whatever it is?
> JUROR 2: Yeah.
> PROSECUTOR: Right? That would be against your oath if you did that. Do you think you could avoid doing it?
> JUROR 2: Yes.
> PROSECUTOR: Okay. That's all I have. Thanks.

Then the court spoke with juror 2:

THE COURT: Ma'am, I want to try to clarify what I think I've heard you say. And sometimes it helps my mind to think of analogies. I'm looking out the window and I see the structure of the spectator seating for the fairgrounds. Are you familiar with that?

JUROR 2: Yes.

THE COURT: Would you agree it's not movable?

JUROR 2: Yes.

THE COURT: It's fixed?

JUROR 2: Yes.

THE COURT: Do you have an opinion it's not movable or that it's fixed?

JUROR 2: No.

THE COURT: So could you sit and listen to the evidence that would be presented, follow my instructions as to the law, and be fair to both Michelle Boat and to the State of Iowa?

JUROR 2: I think so, yes.

After this response from juror 2, the district court denied the motion to strike juror 2 for cause. Later, after Boat asked the court to reconsider its ruling and provide her an additional peremptory strike, the court stated it denied the request to strike juror 2 for cause:

> because I am relying on the test [from *Neuendorf*] to be applied in ruling on challenges for cause, which is whether the juror holds such a fixed opinion on the merits of the case that she cannot judge impartially the guilt or innocence of the defendant. . . . Also, the Court is relying on Iowa Rule of Criminal Procedure 2.18(5). The further subparagraph that seems to be implicated is K, which provides that the juror already formed or expressed an opinion as to the guilt of the defendant.
>
> The Court has no recollection that [juror 2] indicated that she did. She indicated she was having difficulty. She indicated that she would try to be neutral, and that may not be an exact quote. The Court does not feel that the questioning by either the State's counsel or the Court was so intimidating or extensive that [juror 2] simply acquiesced in what she thought may be the proper answer. The Court feels that she's genuinely answered that she had no fixed opinion on the merits of the case and that she could be impartial and fair to the defendant as well as to the State.

Boat maintains this was an abuse of the trial court's discretion, arguing juror 2 "expressed unequivocally that she had formed an opinion about this case based

on news reports she had previously heard" and only backed away from this position after being rehabilitated by the court. She maintains juror 2's responses to her questions "left the distinct impression the defense would be an at an unfair disadvantage with [juror 2] on the jury."

We do not understand juror 2's statements to be as strong or as clear as Boat characterizes them. First, this is not a case where the potential juror "initially repeatedly expresse[d] actual bias against the defendant based on race, ethnicity, sex, or sexual orientation, both in a pretrial questionnaire and in voir dire . . . ." *Jonas*, 904 N.W.2d at 575. Juror 2 responded that she thought it would be *emotionally* difficult for her to sit on the jury, but—considering the types of evidence and cases jurors are often asked to sit through—that is not uncommon for jurors. *See, e.g.*, *State v. Hickman*, 337 N.W.2d 512, 515–16 (Iowa 1983) ("Death pictures are not ordinarily excluded because they are gruesome, as these pictures are, for murder is by nature gruesome business."); *State v. Koehn*, No. 18-2216, 2020 WL 6480860, at *6 (Iowa Ct. App. Nov. 4, 2020) (recognizing "photographs of small, dead children are likely to elicit emotion from the jury"). And experiencing difficult emotions is not necessarily the same thing as having bias or prejudice for one side or the other. We recognize that when first asked whether she had formed an opinion of the case, juror 2 responded, "Kind of" and then, "Yes." But when the prosecutor and, later, the court asked juror 2 more questions to determine whether juror 2 had "formed . . . an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial," Iowa R. Crim. P. 2.18(5)(k), juror 2 answered she thought she could

base her verdict on only the evidence she heard at trial and that her opinion of the case was not fixed.

While Boat characterizes these questions as the prosecutor's and court's attempt to rehabilitate juror 2, we understand them as an attempt to better understand juror 2's responses to Boat's broad, leading questions. Juror 2 had told Boat that it would be difficult for her to be on the jury and that she already had an opinion on the case—the prosecutor and court responded by asking whether juror 2 could set her opinion aside and decide the case on the trial evidence. The tenor of this discussion is not like that in *Jonas*, where the potential juror repeatedly admitted that the fact the defendant was gay would influence his decision despite the court's continued attempt to press the potential juror into saying he would be unbiased. 904 N.W.2d at 569–70. The brief exchange that took place here falls far short of the "persistent questioning" in *Jonas*. *Id.* at 575 ("[W]e do not believe the district court can rehabilitate the potential juror through persistent questioning regarding whether the juror would follow instructions from the court."). And the district court, which had the opportunity to hear the questions and answers live, while watching juror 2's demeanor, believed "that [juror 2] genuinely answered that she had no fixed opinion on the merits of the case and that she could be impartial and fair to the defendant as well as to the State." *See Skilling v. United States*, 561 U.S. 358, 386–87, 395 (2010) (recognizing that trial courts have a "face-to-face opportunity to gauge demeanor and credibility," so appellate courts should be "resistant to second guessing the trial judge's decisions on juror impartiality," which is influenced by many factors impossible to capture in a cold record).

For these reasons, we conclude the district court did not abuse its discretion in denying Boat's motion to strike juror 2 for cause.

**B. Prosecutorial Error.**

Boat argues she was deprived of a fair trial because of comments made by the prosecutor during closing arguments about severity of crimes, which she maintains was an implicit discussion of punishment; she contends her motion for mistrial should have been granted. We review the court's denial of this motion for abuse of discretion. *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018).

"[T]o establish a violation of the right to a fair trial, a defendant must show both (1) error or misconduct and (2) prejudice." *State v. Plain*, 898 N.W.2d 801, 818 (Iowa 2017). "Prosecutorial error occurs 'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on 'excusable human error, despite the attorney's use of reasonable care.'"[4] *Id.* at 818 n.4 (citation omitted). If an error occurred, the critical question is whether that error deprived the defendant of a fair trial. *See State v. Graves*, 668 N.W.2d 860, 876 (Iowa 2003). In determining whether the defendant was prejudiced by any error, we consider the following factors: (1) the severity and pervasiveness of the complained-of action; (2) the significance of the action to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions

---

[4] In contrast, a claim of prosecutorial misconduct constitutes an allegation the prosecutor "intentionally violate[d] a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct" or "recklessly disregard[ed] a duty to comply with an obligation or standard." *Plain*, 898 N.W.2d at 818 n.4 (citation omitted).

or other curative measures; and (5) the extent to which the defense invited the error. *Id.* at 869.

Boat argues the prosecutor committed error when making the following statements during closing argument:

> I want to back up to this one. So I want to spend just a minute talking about lesser-included offenses because I don't want you to be confused about it.
>
> You may have noticed from all the instructions, there's a lot of them, that says—starts with murder one, the statements prove all these elements. If we have, she's guilty; if we haven't, go to the next one down, the next lesser-included offense.
>
> So the process that you are to use in assessing and doing your deliberations is to start at the highest offense, murder in the first degree. If you find that the evidence has proved the defendant guilty of those charges beyond a reasonable doubt, you're done. You don't have to look at the next one or the next one or the next one. It's a downward-stepping ladder.
>
> It is not a process where you take all of those crimes and go, Which one sounds most like what we think happened? Because— and it's not that way because whether you commit murder in the first degree of necessity, you have also committed all the lesser-included offenses. That's why we call them lesser-included offenses.
>
> It's not, Which one sounds the most alike?
>
> It is, Which one is proved?
>
> And it's a downward ladder. So if you find that the State has proven first degree murder, you don't have to look at any of the lesser-includeds. You don't have to understand any of the definitions associated with them. You're done. That's how it works.
>
> It's only if the State hasn't proven each and every element that you need to concern yourself at all with any of the lesser-included offenses. It's not a sounds-most-like process.
>
> It has to be, What has been proven starting at the top and moving down?
>
> So what defenses have been put forward here? We heard from [defense counsel] in her opening statement that it's not murder. It's manslaughter. She didn't go any farther than that. I'm sure you'll be hearing from [defense counsel again soon], but that's what you've heard so far.
>
> One of the lessors—by the way, any time you're talking about heat of passion, you're already down to, like, the fourth lesser because it starts with murder in the first degree, then there's murder in the second degree, then there's attempt to commit murder, then there's willful injury. And it's not until the fifth lesser that you even

get to any discussion at all or need to consider anything about heat of passion and/or it may be that this was some sort of unintentional reckless killing of Tracy Mondabough.

But since counsel mentioned and it sounded like from the defendant's testimony that she would like you to believe that this was just the result of this heat of passion, I'm going to spend a few minutes talking about that with you.

Instruction No. 31, this is for voluntary manslaughter, again, the fifth lesser-included, or I can't remember down the line—way below murder in the first degree. Instruction for voluntary manslaughter is that the stabbing was done solely by reason of a sudden, violent, and irresistible passion resulting from serious provocation.

. . . .

And the other defense is mercy. Essentially—it may remain unspoken, but the defendant has essentially thrown herself on the mercy of [the jury].

Please don't convict me of this because of my pathetic situation.

This argument or this suggestion to you is beyond the pale considering the defendant's absolute merciless and viciousness of her attack, stalking, and killing of Tracy Mondabough. Not one ounce of mercy did she show, but, please, show mercy towards her, which is also not a defense. But to the extent that it may be playing into your minds, I mention it.

Then, outside the presence of the jury, Boat moved for mistrial, arguing,

Your Honor, at this time we would move for a mistrial. [Co-counsel] and I were troubled initially when the State talked a bit about the order and the verdict forms, suggesting in our opinion that the order had something to do with the corresponding severity and punishment. We became more troubled when the State . . . in talking about our client's plea for sympathy from if jury, that she was essentially asking that they feel sympathetic to her and not find her guilty of the much more serious crime.

At that point, we believe this crossed a line into a pretty clear reference to punishment and that the jury should be taking some consideration of what level of offense their verdict might be and whether or not it's a serious enough crime instead of just simply what the facts are.

We instruct them that they have nothing to do with punishment, and that suggestion by the State injects a consideration for punishment.

We believe a mistrial is the only remedy. This is not something that we can add some more specific curative instruction. Again, we're aware as always the jury is instructed as they are in

Instruction No. 6. This is simply something for which the Court has no choice but to declare a mistrial.

And, also, again, the record will reflect that there was some language used that our client was asking the jury for mercy, which, again, is an implication toward punishment and that they have something to do with punishment in this case when they decide on a verdict.

The prosecutor responded:

I don't deny making the statements that I made. I think the discussion of lesser-included offenses is not inappropriate. That is essentially what the defense is going to be asking for.

There was no discussion of how long or what the punishment was, which I didn't do. I just pointed out that voluntary manslaughter was four crimes down. I did not intend to, nor do I think the jury inferred anything about what the punishments would be except they would be, since it's a lesser crime, less serious. And I don't think there's anything inappropriate or prejudicial about those arguments especially given the posture of this case starting off with the defense's essential appeal to some sort of manslaughter.

The court noted the jury was instructed it had nothing to do with punishment and that closing arguments were not evidence. The court denied Boat's motion, ruling in part:

[T]he instructions are replete with the use of the words lesser-included offenses, beginning at Instruction No. 1. The Court instructs the jury that the Trial Information embraces the lesser-included offenses and each is listed thereafter.

Obviously each marshaling instruction for the lesser-included offense described the offense as a lesser-included offense and if not proven should lead the jury to the next.

The Court cannot conclude or find that a reasonable juror under these circumstances would be misled into believing despite the instruction they have no role in punishment, that somehow they're asked to [mete] out punishment by choosing a more severe charge as opposed to a . . . lesser-included offense.

Moreover, the Court can't conclude that a reasonable juror would interpret [the prosecutor's] argument in anticipation of Defense's request to find the defendant in a more favorable light as somehow inappropriate . . . .

Boat argues the prosecutor's repeated mention of "lesser" offenses and emphasizing how "far down" manslaughter was constituted an impermissible reference to punishment. *See State v. Hatter*, 381 N.W.2d 370, 375 (Iowa Ct. App. 1985) ("Penalties have nothing to do with the factual determination that a defendant did or did not commit a crime."). She also argues that directing the jury to reject "mercy" improperly encouraged the jury to find her guilty of the harshest crime to impose the harshest punishment. From its standpoint, the State emphasizes it was a fair comment to respond to Boat's own argument that the jury consider one of the lesser-included offenses.

Boat has not pointed to any authority that holds it is improper for the prosecutor to refer to a crimes or charge as a "lesser included" of another. And, as the district court noted, the jury was introduced to the idea that manslaughter was "lesser" than murder before the prosecutor's closing argument. Plus, we note that at the agreement of the parties, the jury was given the verdict form to consider during closing arguments, which explains a number of references to how far "down" the list some charges were from others—the prosecutor seems to have been literally referencing the distance between two crimes as laid out in list form on sheets of paper.

Like the district court, we do not understand the prosecutor's reference to "lesser" crimes as an implicit invocation of punishment. And the prosecutor's discussion of mercy was in response to Boat's opening statement that she was at most guilty of manslaughter instead of murder and she was "devastated" and "heartbroken" after her husband left. *See Coleman*, 907 N.W.2d at 140 (recognizing the prosecutor is allowed "to make statements aimed at the theory of

the defense"); *see also Wycoff v. State*, 382 N.W.2d 462, 468 (Iowa 1986) ("We allow a prosecutor 'some leeway when his remarks are provoked and are offered in retaliation to arguments for the accused.'" (quoting *State v. Wright*, 309 N.W.2d 891, 893 (Iowa 1981))).

The prosecutor's statements were fair comments on the instructions and the defense's arguments; the prosecutor committed no error. For that reason, we need not consider whether Boat established prejudice based on the complained-of comments. The district court did not abuse its discretion in denying the motion for mistrial.

## C. Sentencing

Finally, Boat argues the district court improperly considered her assets that were not subject to execution in determining her reasonable ability to pay category "B" restitution. "We review restitution orders for correction of errors at law." *State v. Waigand*, 953 N.W.2d 689, 694 (Iowa 2021) (quoting *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010)). "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004) (citation omitted).

To successfully challenge her reasonable ability to pay, Boat "must affirmatively prove by a preponderance of the evidence that the offender is unable to reasonably make payments toward the full amount of category 'B' restitution." Iowa Code § 910.2A(2)(a) (2021). As part of her challenge, Boat was required to complete a financial affidavit. *See id.* § 910.2A(2)(b). This financial affidavit must include "the offender's income, physical and mental health, age, education,

employment, inheritance, other debts, other amounts of restitution owed, family circumstances, and *any assets subject to execution . . . .*"  *Id.* § 910.1(4) (emphasis added).  Boat submitted an affidavit that included five pages of handwritten lists of her assets, which included things like clothing, household goods, vehicles, and medical supplies.

The district court noted the State asked that Boat pay $6673.65 in category "B" restitution.  Relying on Boat's submitted affidavit, the court concluded that she had "a sole or marital interest in . . . approximately $143,250.00" of assets."[5]  The court concluded that, while Boat was sentenced to life in prison and was not employed, she had the ability to pay the $6673.65 in category "B" restitution.

Here on appeal, Boat maintains the court misapplied the law in determining her reasonable ability to pay.  She asserts that the court was wrong to consider property that was exempt from execution when determining her net assets.  *See* Iowa Code § 627.6 (listing categories of items a debtor may hold exempt).  She asks that we vacate the restitution portion of her sentencing and remand for further proceedings to determine whether she had the reasonable ability to pay the category "B" restitution.

We take the State's view—while section 910.1(4) only required Boat to include in her financial affidavit assets that are subject to execution, nothing in the statute prevented Boat from including additional assets or restricted the district court from considering them.   Rather, the district court was to make its

---

[5] The court took the value of the property Boat provided ($296,250) and subtracted her debts ($153,000), which included the amount owed to Mondabough's estate, to reach the amount of $143,250.

determination "[b]ased on the evidence offered at the hearing, *including but not limited to* the financial affidavit . . . ." *Id.* § 910.2A(2)(d). Notably, Boat does not argue that all of the assets listed were exempt from execution, and, while some items listed might be, there were assets considered that were not. *See id.* § 627.6. As an additional consideration, the district court mentioned that Boat's husband might have an equal or greater claim to the assets but that Boat could apply to make installment payments over time. The district court did not err in considering all of the information it was provided in Boat's financial affidavit, and we affirm its determination of Boat's reasonable ability to pay category "B" restitution.

## III. Conclusion

The district court did not abuse its discretion in denying Boat's motion to strike a potential juror for cause or in denying her motion for mistrial based on prosecutorial error. The court also did not err in considering Boat's assets that are exempt from execution when determining her reasonable ability to pay category "B" restitution.

**AFFIRMED.**